**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 10, 2009

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                  No. 135888

HARVEY EUGENE JACKSON,

     Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

This case presents us with several questions regarding the process by which Michigan trial courts impose attorney fees on convicted criminal defendants who have used court-appointed attorneys. Specifically, we first asked whether *People v Dunbar*, 264 Mich App 240; 690 NW2d 476 (2004), correctly decided that, before imposing a fee for a court-appointed attorney, a trial court must make a presentence articulation of its conclusion that the defendant has a foreseeable ability to pay the fee. We conclude that *Dunbar* was incorrect to the extent that it required a court to conduct an ability-to-pay analysis before imposing a fee for a court-appointed attorney, and we hold that such an analysis is only required once the imposition of the fee is enforced. Further, we hold that once an ability-to-pay

assessment is triggered, the court must consider whether the defendant remains indigent and whether repayment would cause manifest hardship. Finally, we conclude that remittance orders of prisoner funds, under MCL 769.1*l*, generally obviate the need for an ability-to-pay assessment with relation to defendants sentenced to a term of imprisonment because the statute is structured to only take monies from prisoners who are presumed to be nonindigent.

## I. FACTS AND PROCEDURE

Before May 4, 2006, defendant, Harvey E. Jackson, did odd jobs around the home of an acquaintance, Cosma Agrusa. On that day, however, defendant broke into Agrusa's home and assaulted her. He then gathered various pieces of Agrusa's property, pulled the telephone line from the wall, and left the home. Eventually, defendant was charged with several crimes for these actions. As a result of his indigency, defendant was given court-appointed counsel, who negotiated a plea with the prosecutor. Hence, defendant pleaded nolo contendere to first-degree home invasion,[1] assault with intent to rob while unarmed,[2] and tampering with telephone lines.[3] On December 14, 2006, defendant was sentenced to an eight-year minimum prison term, which was in accordance with the plea agreement. In addition, the trial court imposed various costs and fines, including

---

[1] MCL 750.110a(2).

[2] MCL 750.88.

[3] MCL 750.540.

2

$725 for "Initial Defense Costs," i.e., his court-appointed attorney's fee. The trial court did not articulate whether it evaluated defendant's foreseeable ability to pay the attorney fee. Defendant then began serving his prison term.

On January 17, 2007, the trial court issued an order to remit prisoner funds for fines, costs, and assessments. This order allowed the Department of Corrections to begin taking money from defendant's prisoner account to satisfy the various fees and costs imposed by the trial court.

Defendant requested appellate counsel, and the State Appellate Defender Office (SADO) was appointed.[4] On defendant's behalf, SADO moved the trial court to correct defendant's sentence, arguing (among other things) that the trial court incorrectly imposed the attorney fee without considering defendant's ability to pay it. The trial court denied the motion, and SADO filed a delayed application for leave to appeal in the Court of Appeals. The Court of Appeals denied leave to appeal for lack of merit. SADO requested leave to appeal in this Court, and we granted leave. *People v Jackson*, 483 Mich 884 (2009).

---

[4] As a condition to receiving both trial and appellate counsel, defendant was required to sign forms provided by the county that acknowledged defendant's obligation to reimburse the county for the cost of his court-appointed attorneys and the associated court costs. These forms also noted that if defendant was unable to pay these costs in full, he would be required to enter a reimbursement plan in accordance with his ability to pay. The forms also noted that the 20 percent late fee under MCL 600.4801 and MCL 600.4803 may be imposed for fees that were not paid within 56 days of their due date. However, the trial court never imposed any fees associated with defendant's appellate counsel, and it never imposed the statutory late fee.

## II. STANDARD OF REVIEW

Defendant challenges the constitutionality of the procedure used to impose and enforce a fee for his court-appointed attorney. This presents a question of constitutional law, which is reviewed de novo. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008).[5]

## III. ANALYSIS

In this case, defendant relies on *People v Dunbar* to contend that his constitutional rights were violated when the trial court imposed a fee on him for his court-appointed attorney without expressly contemplating his foreseeable ability to pay the fee. To evaluate this claim we must assess (a) the United States Supreme Court's opinions on other states' attempts to recoup fees for court-appointed attorneys; (b) *Dunbar*'s interpretation of those opinions; (c) Michigan's recoupment procedure for fees for court-appointed attorneys; (d) the validity of *Dunbar*'s presentence ability-to-pay rule, and (e) the constitutionality of Michigan's recoupment procedure for attorney fees.

---

[5] The parties contest whether the defendant's claim of error was preserved, which would affect the standard of review relating to defendant's entitlement to relief. However, we decline to decide that issue because our conclusion that the trial court did not err obviates the need to address the preservation issue.

## A. THE UNITED STATES SUPREME COURT'S OPINIONS ON RECOUPMENT PROCEDURES FOR FEES FOR COURT-APPOINTED ATTORNEYS

In 1963 the United States Supreme Court delivered its seminal decision in *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), which held that the Sixth Amendment of the United States Constitution requires that all criminal defendants be afforded legal counsel during trial. This constitutional requirement applies to the states, and it requires them to provide legal counsel to indigent criminal defendants who request an attorney. *Id*. at 342-345. Since *Gideon*, numerous states have instituted various procedures in an effort to recoup the costs of providing indigent defendants with legal counsel. Some defendants have challenged the propriety of specific recoupment procedures, which has given the United States Supreme Court occasion to evaluate the constitutionality of those procedures.

First, in *James v Strange*, 407 US 128; 92 S Ct 2027; 32 L Ed 2d 600 (1972), the Court held that a Kansas statute requiring payment of fees for court-appointed attorneys was unconstitutional because it did not give defendants who owed the state a debt the same debtor exemptions that civil debtors received under the state's laws. Specifically, a defendant who owed the state of Kansas for his court-appointed attorney could only exempt his homestead from collection, whereas the normal civil debtor had a host of other exemptions. *Id*. at 130-131. *James* held that the difference in the laws' application to indigent defendants and other civil debtors violated equal protection principles. *Id*. at 140-142.

5

Second, in *Fuller v Oregon*, 417 US 40; 94 S Ct 2116; 40 L Ed 2d 642 (1974), the Court reviewed a recoupment statute that gave the trial court the discretion to impose a fee for a court-appointed attorney only when the defendant was convicted and, at the time of sentencing, adjudged to have a foreseeable ability to pay the fee. *Id*. at 44-45. The recoupment statute also allowed the defendant the opportunity to request a remission of the earlier-imposed fee when payment would impose a manifest hardship. *Id*. at 45-46. The statute also proscribed punishing the defendant for lack of payment, unless he was able to pay but simply refused. *Id*. The Court took special notice that the statute was "quite clearly directed only at those convicted defendants who are indigent at the time of the criminal proceedings against them but who subsequently gain the ability to pay the expenses of legal representation." *Id*. at 46. Further, "those [defendants] upon whom a conditional obligation is imposed are not subjected to collection procedures until their indigency has ended and no 'manifest hardship' will result." *Id*.

The *Fuller* Court did not accept the defendant's claim that the statute violated equal protection requirements because the statute was objectively rational and was not based on invidious discrimination. *Id*. at 46-50. The Court also rejected the defendant's claim that the statute infringed his constitutional right to counsel, noting that "[t]he fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Id*. at 53.

6

Accordingly, *Fuller* affirmed the constitutionality of Oregon's recoupment statute. *Id*. at 54.

Finally, in *Bearden v Georgia*, 461 US 660; 103 S Ct 2064; 76 L Ed 2d 221 (1983), the Court considered a trial court's decision to revoke a defendant's probation, and remand him to prison, for his inability to pay a fine, which was imposed as part of his probation sentence. *Id*. at 662. Relying on notions of due process and fundamental fairness, the Court held that in order to punish a defendant for "failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id*. at 672. "If the [defendant] willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation . . . ." *Id*. But simply punishing a defendant for his lack of payment, without analyzing his fault in the lack of payment, "would deprive [him] of his . . . freedom simply because, through no fault of his own, he cannot pay the fine." *Id*. at 672-673. "Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id*. at 673.

### B. *PEOPLE v DUNBAR*'S INTERPRETATION OF *JAMES, FULLER*, AND *BEARDEN*

In *Dunbar*, our Court of Appeals was faced with a criminal defendant's argument that a trial court could not impose a fee for a court-appointed attorney without indicating that it had assessed his present and future capacity to pay the fee. *Dunbar,* 264 Mich App at 251. At the time, Michigan had no legislation

regarding a trial court's imposition of a fee for a court-appointed attorney. Therefore, the *Dunbar* Court looked to *James*, *Fuller*, and *Bearden* for direction. Specifically, *Dunbar* noted that these three United States Supreme Court cases were discussed by the court in *Alexander v Johnson*, 742 F2d 117 (CA 4, 1984). *Dunbar* found *Alexander*'s discussion of the cases to be persuasive. In fact, *Dunbar* expressly adopted the following portion from the *Alexander* decision:

> "Although there is no single model to which all state repayment programs must conform, the Supreme Court has carefully identified the basic features separating a constitutionally acceptable recoupment or restitution program from one that is fatally defective. See *Fuller v Oregon*, 417 US [40, 47-54; 94 S Ct 2116; 40 L Ed 2d 642 (1974)]; *James v Strange*, 407 US [128, 135-139; 92 S Ct 2027; 32 L Ed 2d 600 (1972)]. See also *Bearden v Georgia*, 461 US 660; 103 S Ct 2064; 76 L Ed 2d 221 (1983). In *James*, the first of the three decisions bearing on this question, the Supreme Court emphasized that the indigent accepting court-appointed counsel could not be subjected to more severe collection practices than other civil debtors without running afoul of the equal protection clause. In *Fuller*, decided two years later, the Court offered important clarifications of the developing law in this area by upholding an Oregon reimbursement plan that required an indigent to repay court-appointed counsel fees as a condition of probation. The Oregon approach, the Court explained, contained none of the invidious collection practices condemned in *James*, provided an array of procedural and substantive safeguards designed to preserve the indigent's basic right to counsel, and authorized reimbursement from the defendant only when he could afford to pay without substantial hardship. Finally, in *Bearden*, decided nearly a decade later, the Court added a new gloss to the general jurisprudence in this area by ruling that an inmate violating any monetary requirement of his probation or restitution regimen cannot be imprisoned if his non-compliance results from poverty alone.

> "From the Supreme Court's pronouncements in *James*, *Fuller*, and *Bearden*, five basic features of a constitutionally acceptable attorney's fees reimbursement program emerge. First, the program under all circumstances must guarantee the indigent

defendant's fundamental right to counsel without cumbersome procedural obstacles designed to determine whether he is entitled to court-appointed representation. Second, the state's decision to impose the burden of repayment must not be made without providing him notice of the contemplated action and a meaningful opportunity to be heard. Third, the entity deciding whether to require repayment must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required. The purpose of this inquiry is to assure repayment is not required as long as he remains indigent. Fourth, the defendant accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor. Fifth, the indigent defendant ordered to repay his attorney's fees as a condition of work-release, parole, or probation cannot be imprisoned for failing to extinguish his debt as long as his default is attributable to his poverty, not his contumacy." [*Dunbar*, 264 Mich at 252-254, quoting *Alexander*, 742 F2d at 124.]

Relying on this analysis, *Dunbar* held that, before a trial court may impose a fee on a defendant for his court-appointed attorney, it must consider the defendant's ability to pay the fee. *Dunbar*, 264 Mich App at 254-255. *Dunbar* also held that the ability-to-pay inquiry does not require the trial court to make "a specific finding on the record regarding [the defendant's] ability to pay," "unless the defendant specifically objects to the reimbursement amount at the time it is ordered . . . ." *Id*. at 254. "However, [in any context,] the court does need to provide some indication of consideration, such as noting that it reviewed the financial and employment sections of the defendant's presentence investigation report or, even more generally, a statement that it considered the defendant's ability to pay." *Id*. at 254-255, citing *People v Grant*, 455 Mich 221, 242, 243 n 30; 565 NW2d 389 (1997). And "[t]he amount ordered to be reimbursed for

9

court-appointed attorney fees should bear a relation to the defendant's *foreseeable* ability to pay." *Id*. at 255. Finally, "[a] defendant's apparent inability to pay at the time of sentencing is not necessarily indicative of the propriety of requiring reimbursement because a defendant's capacity for future earnings may also be considered." *Id*., citing *Grant*, 455 Mich at 242 n 27.

In essence, *Dunbar* adopted the five elements articulated in *Alexander*, and it required that they all be met before a trial court could impose a fee for a court-appointed attorney as part of a defendant's sentence. *Dunbar* then went further and expanded the third *Alexander* element by requiring trial courts to make a presentence articulation regarding a defendant's foreseeable ability to pay the fee. We generally refer to this holding as *Dunbar*'s "ability-to-pay rule."

## C.  MICHIGAN'S RECOUPMENT PROCEDURE FOR FEES FOR COURT-APPOINTED ATTORNEYS

Soon after *Dunbar*, our Legislature promulgated MCL 769.1k and MCL 769.1*l*. These statutes give Michigan trial courts the power to both impose a fee for a court-appointed attorney as part of a defendant's sentence and to enforce that imposition against an imprisoned defendant. MCL 769.1k allows imposition of such fee. It states, in pertinent part:

> (1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred pursuant to statute or sentencing is delayed pursuant to statute:
> * * *
> (b) The court may impose any or all of the following:
> * * *

10

(*iii*) The expenses of providing legal assistance to the defendant.

Notably, this power to impose the fee is not limited by reference to a defendant's ability to pay.

MCL 769.1*l* allows trial courts to recoup the costs imposed under § 1k by authorizing the Department of Corrections to take funds from a prisoner's prison account. This statute also operates irrespective of a defendant's ability to pay. It states, in pertinent part:

> If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in section 1k and the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, is transferred to community programs, or is discharged on the maximum sentence.[6]

---

[6] Defendants sentenced to probation may also be subject to an attorney-fee recoupment order. As a condition of probation, a defendant may be ordered to pay the cost of "providing legal assistance" during the prosecution of his case. MCL 771.3(2)(c); MCL 771.3(5). Unlike MCL 769.1*l*, MCL 771.3 includes provisions, consistent with the statutory requirements outlined in *Fuller*, expressly requiring the court to consider the defendant's ability to pay at the time of enforcement and before basing a revocation of probation on a failure to pay:

> (6) If the court imposes costs under subsection (2) as part of a sentence of probation, all of the following apply:

> (a) The court shall not require a probationer to pay costs under subsection (2) unless the probationer is or will be able to pay them during the term of probation. In determining the amount and method of payment of costs under subsection (2), the court shall take into account the probationer's financial resources and the nature of

11

## D. THE VALIDITY OF *DUNBAR'S* ABILITY-TO-PAY RULE AND THE CONSTITUTIONALITY OF MICHIGAN'S RECOUPMENT PROCEDURE FOR FEES FOR COURT-APPOINTED ATTORNEYS

In this case, the trial court relied on § 1k to impose on defendant a fee for his court-appointed attorney. The trial court then relied on § 1*l* to enforce the

the burden that payment of costs will impose, with due regard to his or her other obligations.

(b) A probationer who is required to pay costs under subsection (1)(g) or (2)(c) and who is not in willful default of the payment of the costs may petition the sentencing judge or his or her successor at any time for a remission of the payment of any unpaid portion of those costs. If the court determines that payment of the amount due will impose a manifest hardship on the probationer or his or her immediate family, the court may remit all or part of the amount due in costs or modify the method of payment.

\* \* \*

(8) If a probationer is ordered to pay costs as part of a sentence of probation, compliance with that order shall be a condition of probation. The court may revoke probation if the probationer fails to comply with the order and if the probationer has not made a good faith effort to comply with the order. In determining whether to revoke probation, the court shall consider the probationer's employment status, earning ability, and financial resources, the willfulness of the probationer's failure to pay, and any other special circumstances that may have a bearing on the probationer's ability to pay. . . .

While the Legislature has provided for an ability-to-pay assessment before revoking a prisoner's parole on the basis of a failure to pay restitution and state costs, MCL 791.240a(11), it has not enacted any similar provisions relevant to a parolee's obligation to pay the fees of court-appointed counsel. Based solely on the statutes relevant to parolees, just like under the statutes relevant to imprisoned individuals, parolees would be subject to enforcement of attorney-fee recoupment orders irrespective of their ability to pay. Accordingly, the ability-to-pay analysis based on *Fuller* and outlined in this opinion would apply equally to parolees and prisoners.

imposition of the attorney fee by directing the Department of Corrections to remit funds from defendant's prisoner account. If this case presented a banal question of statutory application, the trial court's actions would be summarily affirmed because they are authorized by the above-mentioned statutes. However, defendant claims that these statutes unconstitutionally infringed his Sixth Amendment right to counsel.[7] Accordingly, this case presents a more nuanced constitutional question regarding a criminal defendant's right to counsel.

*Dunbar*'s ability-to-pay rule clearly requires the trial court to (1) conduct a presentence analysis of a defendant's foreseeable ability to pay the fee for his court-appointed attorney and (2) make some articulation of that analysis. Yet, § lk allows for the imposition of a fee for a court-appointed attorney irrespective of a defendant's ability to pay, and § 1*l* allows the trial court to order that a prisoner's prison account be reduced to satisfy costs imposed under § 1k. This is usually accomplished by a remittance order, which also does not require an ability-to-pay analysis. Consequently, *Dunbar*'s ability-to-pay rule conflicts with the statutes regarding the proper method for a court to impose the attorney fee. This case requires us to resolve this conflict because the trial court here did not articulate an analysis of defendant's foreseeable ability to pay. Thus, we must adjudge the

---

[7] See US Const, Am VI.

13

validity of *Dunbar*'s ability-to-pay rule and the constitutionality of Michigan's statutory procedure for recouping fees for court-appointed attorneys.[8]

*Dunbar* surveyed the United States Supreme Court opinions and it accepted *Alexander*'s articulation of the five elements that a recoupment procedure for fees for court-appointed attorneys must meet. *Dunbar*'s ability-to-pay rule derives from the third *Alexander* element, which states that

> "the entity deciding whether to require repayment must take cognizance of the individual's resources, the other demands on his own and family's finances, and the hardships he or his family will endure if repayment is required. The purpose of this inquiry is to assure repayment is not required as long as he remains indigent." [*Dunbar*, 264 Mich App at 253, quoting *Alexander*, 742 F2d at 124.]

We accept this element's articulation of a constitutional requirement. But *Dunbar*'s ability-to-pay rule is an extension of this rule. Indeed, while the element requires that a truly indigent defendant never be required to pay the fee, the element never mandates that this indigency analysis take place before *imposing* the fee. Nonetheless, we must still analyze whether *Dunbar*'s ability-to-pay rule is constitutionally required. For several reasons, we conclude that it is not.

The germane United States Supreme Court opinions do not require a presentence ability-to-pay assessment. *James* had nothing to do with a

---

[8] In the past, we have declined to answer this question. See *People v Trapp* 482 Mich 1044 (2008) (denying leave to appeal). Irrespective of the bases for our earlier declination, we are now resolved to settle this nettlesome issue. Because we now overrule *Dunbar*, and because the Court in *People v Trapp*, 280 Mich App 598; 760 NW2d 791 (2008), relied on *Dunbar*, we also overrule *Trapp* to the extent it contradicts our decision today.

14

defendant's ability to pay; it dealt with an equal protection issue. *Bearden* required an ability-to-pay assessment, but it only required such an assessment before the defendant was imprisoned for defaulting on a probation condition to pay costs. The defendant here has never had his sentence changed, increased, or amended because of his inability to pay a fee for his court-appointed attorney. *Fuller* comes the closest to supporting *Dunbar*'s ability-to-pay rule because it dealt with an Oregon statute that required an ability-to-pay assessment before imposition of the fee. Thus, the *Dunbar* ability-to-pay rule is arguably an importation of the Oregon procedure for our trial courts. But, in *Fuller*, the Court only said that Oregon's statutory structure was constitutionally valid; it did not adopt the Oregon procedure as the constitutional standard. Indeed, *Fuller*'s holding is limited to *why* the Oregon statute was constitutional.[9] In other words, *Fuller* did not say that a postsentence, pre-enforcement ability-to-pay assessment would be unconstitutional. This limited interpretation of *Fuller* also comports with the United States Supreme Court's consistent resistance to deliver broad, overarching holdings applicable to each and every recoupment procedure for fees

---

[9] *Fuller* did not say that all other recoupment procedures must comply with the Oregon statute's requirements. Instead it simply upheld the statute because it

> merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship. [*Fuller*, 417 US at 54.]

15

for court-appointed attorneys.[10] Therefore, this triad of constitutional cases does not mandate *Dunbar*'s presentence ability-to-pay rule.

*Dunbar* also erroneously supported its ability-to-pay rule by citing our decision in *People v Grant*, *supra*. See *Dunbar*, 264 Mich App at 255, citing *Grant*, 455 Mich at 242, 242 n 27, 243 n 30. In *Grant*, we analyzed the restitution provision of the Crime Victim's Rights Act, MCL 780.767. At that time, the statute allowed a court to require a convicted defendant to pay restitution to the victim, but the statute required the court to "consider . . . the financial resources and earning ability of the defendant, the financial needs of the defendant and the defendant's dependents, and such other factors as the court considers appropriate."[11] Thus, *Grant* dealt with an ability-to-pay analysis that was expressly required by our Legislature. In this case, the applicable statute, MCL 769.1k, does not require any ability-to-pay analysis before imposing a fee for a court-appointed attorney. Unlike *Grant*'s statutorily based ability-to-pay analysis,

---

[10] In *James*, the Court stated that "[i]t is . . . apparent that state recoupment laws and procedures differ significantly in their particulars. Given the wide differences in the features of these statutes, any broadside pronouncement on their general validity would be inappropriate." *James*, 407 US at 133. Further, in *Fuller*, the Court stated, "'We do not inquire whether this statute is wise or desirable. Misguided laws may nonetheless be constitutional.'" *Fuller*, 417 US at 49, quoting *James*, 407 US at 133.

[11] Since that time, the statute has been amended to remove this assessment of the defendant's financial resources. Currently, the statute states: "In determining the amount of restitution to order under section 16, the court shall consider the amount of the loss sustained by any victim as a result of the offense." MCL 780.767(1).

*Dunbar*'s ability-to-pay rule is premised solely on constitutional grounds. Yet, *Grant* made no reference to any constitutional requirement for such an analysis. Thus, *Dunbar* wrongly relied on *Grant* to support its ability-to-pay rule.[12]

Further, *Dunbar*'s ability-to-pay rule frustrates the Legislature's legitimate interest in recouping fees for court-appointed attorneys from defendants who eventually gain the ability to pay those fees.[13] *Fuller* expressly noted that, despite pretrial indigency, a criminal defendant is not forever immune from being required to pay the state for the cost of his court-appointed attorney, assuming he eventually gains the ability to pay.[14] And we have expressed our approval of this legitimate governmental purpose of recouping the costs of court-appointed counsel from criminal defendants. *Davis v Oakland Circuit Judge*, 383 Mich 717, 720; 178 NW2d 920 (1970). Yet, under *Dunbar*, the trial court, and thus the state of Michigan, is forced to make a forever-binding presentence guess whether a

---

[12] See Justice Corrigan's dissenting statement in *People v Carter*, 480 Mich 1063, 1071 n 10 (2008), which discussed the *Dunbar* Court's improper reliance on *Grant*.

[13] See *James*, 407 US at 141 (recognizing that "state recoupment statutes [for fees for court-appointed attorneys] may betoken legitimate state interests").

[14]

> A defendant in a criminal case who is just above the line separating the indigent from the nonindigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship. [*Fuller*, 417 US at 53-54.]

particular defendant will ever gain the ability to pay the fee. Despite our deepest wishes to the contrary, no judge is so clairvoyant, and the state should not be forever precluded from seeking repayment from a defendant who has later gained the ability to pay, simply because at the time of sentencing it wrongly concluded that the defendant would never rise above indigency.[15]

Thus, we conclude that *Dunbar* was incorrect to the extent that it held that criminal defendants have a constitutional right to an assessment of their ability to pay before the imposition of a fee for a court-appointed attorney. With no constitutional mandate, *Dunbar*'s presentence ability-to-pay rule must yield to the Legislature's contrary intent that no such analysis is required at sentencing. See MCL 769.1k and 769.1*l*.

We also note that, when considering an ability-to-pay analysis, there is a substantive difference between the imposition of a fee and the enforcement of that fee. This is supported by our reasoning in *People v Music*, 428 Mich 356; 408 NW2d 795 (1987). In *Music* we were analyzing a statute, MCL 771.3(5)(a), that allowed the trial court to order restitution and payment of costs as part of a probation sentence. *Id*. at 358. The statute, however, provided:

> The court shall not require a probationer to pay restitution or costs unless the probationer is or will be able to pay them during the

---

[15] *Dunbar* recognized this in its concession that "[a] defendant's apparent inability to pay at the time of sentencing is not necessarily indicative of the propriety of requiring reimbursement because a defendant's capacity for future earnings may also be considered." *Id*. at 255.

term of probation. In determining the amount and method of payment of restitution and costs, the court shall take into account the financial resources of the probationer and the nature of the burden that payment of restitution or costs will impose, with due regard to his or her other obligations.[16]

The defendant in *Music* argued that the trial court erred in imposing costs on him without establishing his ability to pay them. *Music*, 428 Mich at 358. We held that when a defendant is statutorily entitled to an ability-to-pay assessment, that assessment is not required when the fee or cost is imposed; instead, that assessment is only required at the time payment is required, i.e., when the imposition is enforced.[17] Hence, for purposes of an ability-to-pay analysis, we have recognized a substantive difference between the imposition of a fee and the enforcement of that imposition. It matters not that the ability-to-pay assessment in

---

[16] As indicated earlier the substance of this provision is now located at MCL 771.3(6)(a).

[17] We stated:

"The statutory limitations on the court's discretion to require these payments, however, are directed at the court's ability to force payment through probation revocation. The statutory language allows for the imposition of restitution or costs. It then continues that if restitution or costs are imposed the court may not require payment unless the probationer is able to pay. Thus the statute makes a distinction between *imposition* and *payment*. While a court must comply with the limitations [i.e., establishing a defendant's ability to pay] in requiring payment of costs or restitution as a probation condition, the limitations are not directed at requiring a court to hold a hearing or make findings on the record at the time costs and restitution are imposed." [*Music*, 428 Mich at 360, quoting *People v Music*, 157 Mich App 375, 379-380; 403 NW2d 143 (1987).]

19

*Music* was required by statute, whereas it is based on the United State Supreme Court's analysis in *Fuller* in the instant context. What is of import is that defendants in both contexts are entitled to an ability-to-pay assessment at some point in time; therefore, the distinction between fee imposition and fee enforcement is equally applicable to both contexts. Accordingly, like the defendant in *Music*, the instant defendant is not entitled to an ability-to-pay assessment until the imposition of the fee is enforced.

Our decision today does not affect the minimal due process requirements that entitle a defendant to notice and an opportunity to be heard regarding the enforcement of earlier imposed costs and fees. Indeed, *whenever* a trial court attempts to enforce its imposition of a fee for a court-appointed attorney under MCL 769.1k, the defendant must be advised of this enforcement action and be given an opportunity to contest the enforcement on the basis of his indigency. Thus, trial courts should not entertain defendants' ability-to-pay-based challenges to the imposition of fees until enforcement of that imposition has begun.[18] Even *Dunbar* recognized that these pre-enforcement challenges would be premature.[19]

---

[18] We note that strictly legal challenges to the imposition of fees and costs under MCL 769.1k (i.e., challenges that are not based on indigency, such as the statute not applying) must be preserved when the trial court imposes the fee. If not challenged at that point, the claim of error will be seen as unpreserved.

[19] "We note that, in most cases, challenges to the reimbursement order will be premature if the defendant has not been required to commence repayment." *Dunbar*, 264 Mich App at 256.

Nonetheless, once enforcement of the fee imposition has begun, and a defendant has made a timely objection based on his claimed inability to pay, the trial courts should evaluate the defendant's ability to pay.[20] The operative question for any such evaluation will be whether a defendant is indigent and unable to pay *at that time* or whether forced payment would work a manifest hardship on the defendant *at that time*.

Currently, the factors set forth in MCR 6.005(B) are used to determine whether a defendant's pretrial indigency entitles him to a court-appointed attorney.[21] While these factors might be an adequate gauge of the indigency of a parolee or probationer, they are largely irrelevant in relation to imprisoned

---

[20] While some cases may require a formal hearing for this analysis, others clearly will not. In either situation, the trial courts must exercise sound discretion in fairly and properly adjudicating a defendant's challenge to his ability to pay.

[21] The court rule requires that the trial court assess the following factors in deciding whether a defendant is indigent:

> (1) present employment, earning capacity and living expenses;
> (2) outstanding debts and liabilities, secured and unsecured;
> (3) whether the defendant has qualified for and is receiving any form of public assistance;
> (4) availability and convertibility, without undue financial hardship to the defendant and the defendant's dependents, of any personal or real property owned; and
> (5) any other circumstances that would impair the ability to pay a lawyer's fee as would ordinarily be required to retain competent counsel.
>
> The ability to post bond for pretrial release does not make the defendant ineligible for appointment of a lawyer. [MCR 6.005(B).]

individuals. We acknowledge that the trial courts require guidance, such as that provided in MCR 6.005(B), to determine whether a defendant is indigent when the court enters a posttrial order to enforce an attorney fee recoupment order. In fact, this Court is currently considering the adoption of guidelines specific to the determination of indigency for purposes of imposing and enforcing an obligation to pay the cost of a court-appointed attorney as part of ADM File No. 2008-23. In the meantime, trial courts should focus on whether the defendant's indigency has ended and whether payment at the level ordered would cause manifest hardship.

### E. THE CONSTITUTIONALITY OF MICHIGAN'S RECOUPMENT PROCEDURE FOR FEES FOR COURT-APPOINTED ATTORNEYS

Despite our conclusion that *Dunbar*'s ability-to-pay rule is not constitutionally mandated, we must still evaluate defendant's contention that Michigan's recoupment procedure for fees for court-appointed attorneys is unconstitutional. Defendant initially claims that MCL 769.1k is unconstitutional when trial courts apply it to impose a fee for a court-appointed attorney without conducting a presentence ability-to-pay analysis. We disagree because, as noted earlier, there is no constitutionally required ability-to-pay analysis until the fee is actually enforced.

Defendant also argues that MCL 769.1*l* is unconstitutional because it is an enforcement of the imposition of a fee for a court-appointed attorney, yet it does not require an ability-to-pay analysis. Defendant correctly notes that when a prisoner, like himself, has had a fee for a court-appointed attorney imposed on

22

him, § 1*l* allows a trial court to order the Department of Corrections to "deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00 . . . ." We acknowledge that this procedure is an enforcement of the fee without an ability-to-pay assessment. But we decline to hold that this enforcement procedure is unconstitutional, because the statute's monetary calculations necessarily conduct a preliminary, general ability-to-pay assessment before the prisoner's funds are taken.

The ability-to-pay analysis should not be confused with the underlying constitutional tenet; it is merely a procedure used to ensure compliance with the constitutional precept that no indigent defendant must be forced to pay. In other words, as long as it does not require indigent defendants to pay a fee, a procedure that enforces the fee is not unconstitutional simply because it does not require an ability-to-pay analysis. Indeed, the true issue is always indigency, no matter what test is used to evaluate the issue. And application of § 1*l*'s calculative procedure necessarily only applies to prisoners who have an apparent ability to pay.

MCL 769.1*l* inherently calculates a prisoner's general ability to pay and, in effect, creates a statutory presumption of nonindigency. The provision only allows the garnishment of a prisoner's account if the balance exceeds $50. Although this amount would be insufficient to sustain a defendant living among the general populace, it is uncontested that a prisoner's "living expenses" are nil, as the prisoner is clothed, sheltered, fed, and has all his medical needs provided by

the state. The funds left to the prisoner on a monthly basis are more than adequate to cover the prisoner's other minimal expenses and obligations without causing manifest hardship. Thus, we conclude that § 1*l*'s application makes a legitimate presumption that the prisoner is not indigent.[22]

We acknowledge that one's indigency is an individualized assessment and that § 1*l*'s presumption does not result from a full individualized analysis of a prisoner's indigency. Accordingly, if a prisoner believes that his unique individual financial circumstances rebut § 1*l*'s presumption of nonindigency, he may petition the court to reduce or eliminate the amount that the remittance order requires him to pay. However, because we adjudge a prisoner's indigency at the time of enforcement on the basis of manifest hardship and because a prisoner is being provided all significant life necessities by the state, we caution that the imprisoned defendant bears a heavy burden of establishing his extraordinary financial circumstances. While we do not attempt to lay out an extensive formal structure by which trial courts are to review these claims, we do direct that they be guided by MCL 771.3(6)(b), which controls the similar situation in which a probationer seeks remission of costs owed.[23] Specifically, when reviewing a

---

[22] See Justice Corrigan's statements in *People v Banks*, 482 Mich 1051, 1052 (2008) (Corrigan, J., concurring), and *People v McCaa*, 481 Mich 939, 941 (2008) (Corrigan, J., dissenting), which contained similar arguments.

[23] We acknowledge that a more formal construct is desirable for this issue. But until a statute or court rule is promulgated to give such formal direction, we conclude that the probation code gives adequate guidance in its handling of an

prisoner's claim, lower courts must receive the prisoner's petition and any proofs of his unique and extraordinary financial circumstances. Further, the lower courts should only hold that a prisoner's individual circumstances warrant amending or reducing the remittance order when, in its discretion, it determines that enforcement would work a manifest hardship on the prisoner or his immediate family. The trial courts are under no obligation to hold any formal proceedings. They are only required to amend the remittance order when § 1*l*'s presumption of nonindigency is rebutted with evidence that enforcement would impose a manifest hardship on the prisoner or his immediate family.[24] Beyond these basic parameters, we leave it to the trial courts, in their sound discretion, to decide how to adjudicate a prisoner's claim that his individual circumstances rebut § 1*l*'s presumption of nonindigency.[25]

_____

analogous situation. When a probationer claims "manifest hardship" in a request to remit what is owed to the state, the probation code commands:

> A probationer who is required to pay costs . . . and who is not in willful default of the payment of the costs may petition the sentencing judge or his or her successor at any time for a remission of the payment of any unpaid portion of those costs. If the court determines that payment of the amount due will impose a manifest hardship on the probationer or his or her immediate family, the court may remit all or part of the amount due in costs or modify the method of payment. [MCL 771.3(6)(b).]

[24] The defendant in this case may make an argument of manifest hardship under this opinion's new rule if he chooses, and the trial court should receive it as if it had been made when the fee was enforced.

[25] Defendant also takes exception to the trial court's procedure of requiring criminal defendants, as a condition to obtaining court-appointed counsel, to sign a

Finally, we had initially intended to decide the constitutionality of a trial court's imposing a 20 percent late fee pursuant to MCL 600.4803(1). *People v Jackson*, 483 Mich 884 (2009). Section 4803(1) clearly allows imposition of this 20 percent late fee on outstanding balances of fees that the trial court imposed on a defendant, which includes the fee for a court-appointed attorney.[26] However, after further review, we decline to answer this question here because the trial court did not impose this late fee on defendant, and there is no indication that it ever will. Thus, at this point, the issue is not ripe.

---

form acknowledging that they may be required to pay the applicable costs. We note that, in *Fuller*, 417 US at 51-52, the United States Supreme Court held that an attorney-fee recoupment scheme did not unconstitutionally "chill" the defendant's right to counsel. The Court specifically stated: "The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Id*. at 53.

[26] The provision states:

A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. A late penalty may be waived by the court upon the request of the person subject to the late penalty. [MCL 600.4803(1).]

## IV. CONCLUSION AND APPLICATION

*Dunbar* wrongly held that a trial court is required to assess a convicted defendant's ability to pay before imposing a fee for a court-appointed attorney. The ability-to-pay assessment is only necessary when that imposition is enforced and the defendant contests his ability to pay. This ability-to-pay assessment is initially obviated under MCL 769.1*l*, in relation to imprisoned defendants, because the procedure in this provision creates a presumption that the prisoner is not indigent.

In this case, the trial court did not err by imposing the fee for his court-appointed attorney without conducting an ability-to-pay analysis. Further, it did not err by issuing the remittance order under MCL 769.1*l* because defendant is presumed to be nonindigent if his prisoner account is only reduced by 50 percent of the amount over $50. However, if he contests his ability to pay that amount, he may ask the trial court to amend or revoke the remittance order, at which point the trial court must decide whether defendant's claim of extraordinary financial circumstances rebuts the statutory presumption of his nonindigency. Accordingly, the trial court is affirmed.

We do not retain jurisdiction.

> Michael F. Cavanagh
> Marilyn Kelly
> Elizabeth A. Weaver
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman
> Diane M. Hathaway

27