*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellee,

v

No. 362496
Kent Circuit Court
LC No. 05-09369-FC

MICHAEL JAY JACKSON,

Defendant-Appellant.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

For nearly two decades, defendant, Michael Jay Jackson, has attempted to obtain appointed counsel to pursue a direct appeal of right from his 2006 criminal convictions. Time and time again, he has been stymied in that effort by his statement during the presentence investigation in 2006 to the effect that he expected to receive residuals of approximately $4,500 to $8,000 per month from the sale of CDs he produced before his arrest. Despite defendant's statements in affidavits that he has not received money while incarcerated, he has not yet convinced any court to provide him with an appointed attorney to pursue a direct appeal of his convictions. But on January 1, 2021, MCR 6.428 was amended to expand defendants' opportunities for restoration of their appellate rights to include matters involving denial of "the appointment of appellate counsel due to errors by . . . the court[.]" Later that year, speaking specifically of defendant, Justice WELCH noted that "defendant may be able to invoke the amended court rule in a properly filed motion." *People v Jackson*, 508 Mich 933, 934 (2021) (WELCH, J., concurring).

Prompted by that suggestion, defendant moved for relief from the judgment on January 7, 2022, arguing that a retroactive change in the law, i.e., the amendment of MCR 6.428, entitled him to restoration of his appellate rights. But the trial court denied defendant's motion, and this Court thereafter denied defendant's application for leave to appeal. *People v Jackson*, unpublished order of the Court of Appeals, entered November 29, 2022 (Docket No. 362496). Defendant applied for leave to appeal to our Supreme Court, which remanded the case to this Court for consideration as on leave granted. *People v Jackson*, 513 Mich 876 (2023). Thus, we must now consider whether defendant is entitled to relief in the form of restoration of his appellate rights under MCR 6.428. We conclude that he is entitled to such relief under the amended version of that rule.

## I. FACTUAL BACKGROUND

In 2006, a jury convicted defendant of conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a, first-degree home invasion, MCL 750.110a(2), four counts of armed robbery, MCL 750.529, and five counts of felony firearm, MCL 750.227b. The trial court then sentenced defendant as a fourth-offense habitual offender, see MCL 769.12, to life imprisonment and several shorter prison terms. After sentencing, defendant requested the appointment of appellate counsel and submitted an affidavit of indigency. On that affidavit, defendant wrote "N/A" in response to questions about his income, assets, and obligations.

The trial court denied defendant's request for appointed appellate counsel because it found defendant was not indigent. The trial court initially observed that, "[o]rdinarily, answering 'N/A,' which defendant did, to questions about his income, assets, and obligations, because it deprives the Court of information necessary to determine whether he is or is not indigent, would result in the denial of his request for the appointment of appellate counsel, but without prejudice to being renewed upon submission of the omitted information." But the trial court determined that a "final denial [was] appropriate in this case" because it was apparent that defendant was not indigent. The trial court explained that "defendant acknowledged to the pre-sentence investigator that he expects to receive, while incarcerated, 'residuals' from the sale of CD's produced by him before his arrest of approximately $4,500-$8,000 per month[.]"

Defendant renewed his request for appointed appellate counsel in March 2007, contending that he was indigent when he requested the appointment of appellate counsel in 2006, so the trial court erred when it denied his request. He argued that, at the very least, the trial court should have held a hearing on the matter of defendant's indigency. Defendant submitted an affidavit with this motion stating that, at the time he requested appointed appellate counsel in July 2006, he "was for all intents and purposes, indigent within the meaning of the law; [he] had no money, stocks, bonds, assets, or income by which to retain counsel to represent [him] in [his] appeal of right in this case." Responding to the statement in the presentence investigation report (PSIR) that defendant received thousands of dollars per month in residuals, defendant insisted he "never made any such statement to the probation agent indicating that [he] was receiving any kind of income from producing and marketing [his] records with M.O.C. Entertainment since [he had] been incarcerated." Defendant additionally claimed that he had "received no money or royalties from M.O.C. Entertainment since [his] arrest and incarceration on January 16, 2005." According to defendant, his only income was approximately $30 per month in the form of gifts from family and friends.

The trial court denied that motion, finding that the affidavit defendant submitted with the motion "create[d] a presumption of indigency," but that presumption was rebutted by "defendant's statement in the psi and his prior affidavit's seemingly calculated silence[.]" The trial court noted that "unless and until defendant establishes that he was not receiving residuals in 2006 and that his contrary claim to the pre-sentence investigator was a lie, or that he is no longer receiving residuals, when they stopped and why, and has not squandered what he did receive, he is not entitled to court-appointed counsel." Consequently, the trial court denied defendant's motion for appointment of appellate counsel "without prejudice to being renewed by defendant upon presentation of evidence acknowledging that he lied to the pre-sentence investigator and confirming that the payment of residuals had stopped before his interview by the pre-sentence investigator, or that circumstances

have changed such that he no longer receives residuals and can establish that what monies he did receive are, because spent appropriately, no longer available for retaining counsel."

Defendant once again moved for the appointment of appellate counsel on April 18, 2008. In an affidavit accompanying that motion, defendant acknowledged that he told the presentence investigator that he expected to receive $4,500 from the sale of CDs based on a conversation he had with his producer. But defendant clarified that this expectation never materialized and he had never received any money from CD sales. Specifically, he stated that he had "not received 'any' residuals, no residuals have been stopped since no residuals for were (sic) ever started," and "[n]o residuals were at all squandered because no residuals were received[.]" Defendant attributed that misplaced expectation to the "fanciful optimism" of his producer. Defendant stated that "the CD's failed to sell" and the entertainment "company was a total failure."

On April 21, 2008, the trial court denied defendant's request because, by then, the deadline for defendant to file an appeal—July 26, 2007—had passed. With the time for pursuing an appeal expired, the trial court did not believe that it had the authority to grant defendant's request for the appointment of appellate counsel. The trial court also noted that it was not aware of any authority allowing reinstatement of defendant's appeal of right. The trial court did not address the merits of the 2006 and 2007 orders.

Eight years later, in October 2016, defendant moved for reissuance of the judgment under MCR 6.428, arguing that the trial court erred when it denied his requests for appointed appellate counsel. But at that time, MCR 6.428 only allowed for the reissuance of a judgment if defendant could establish "that the attorney or attorneys retained or appointed to represent the defendant on direct appeal from the judgment either disregarded the defendant's instructions to perfect a timely appeal of right, or otherwise failed to provide effective assistance, and, but for counsel's deficient performance, the defendant would have perfected a timely appeal of right . . . ." MCR 6.428, as adopted July 13, 2005, 473 Mich lxx (2005).

The trial court denied that motion because the "deadline for filing a timely application for leave to appeal expired long ago, and defendant failed to file a timely application." Additionally, the trial court "lack[ed] authority to reinstate defendant's right to appeal." Defendant appealed the decision, and this Court affirmed the trial court's order. *People v Jackson*, unpublished per curiam opinion of the Court of Appeals, issued June 14, 2018 (Docket No. 336486), p 3. This Court held that MCR 6.428 only addressed failings by appellate counsel, not by trial counsel. *Id.* Defendant also asserted that the trial court erred by failing to file a claim of appeal on defendant's behalf, but this Court rejected that assertion because, at that time, MCR 6.428 did not apply to errors by the trial court. *Id.* Defendant claimed that the trial court erred in its finding that he was not indigent and denying his motions for appointment of appellate counsel. *Id.* But this Court explained that defendant did not appeal the 2006, 2007, or 2008 orders, and instead only appealed the 2016 order. *Id.*, unpub op at 3-4. This Court reasoned that defendant could not challenge those previous orders because that was an impermissible collateral attack. *Id.*, unpub op at 4. Defendant appealed that decision to our Supreme Court, which denied the application for leave to appeal. *People v Jackson*, 503 Mich 931 (2018).

On January 21, 2020, defendant moved for relief from judgment under MCR 6.500 *et seq.*, arguing that the trial court erred when it denied his request for the appointment of appellate counsel

without holding a hearing to determine whether defendant was indigent. Defendant also contended that the attorney who represented him in 2018 was ineffective. The trial court denied defendant's motion, explaining that defendant "attempts to conflate the scope of his appeal of this Court's order denying his motion to reissue the judgment with an appeal of his conviction which he never filed." The trial court commented that "[i]ssues concerning the appointment of appellate counsel due to indigency in anticipation of an appeal of his conviction are unrelated to his motion filed over ten years later for a reissuance of a judgment."

Defendant applied for leave to appeal that decision, but this Court denied his application. *People v Jackson*, unpublished order of the Court of Appeals, entered September 17, 2020 (Docket No. 354329). Our Supreme Court affirmed that denial. *People v Jackson*, 508 Mich 933 (2021). In a concurring opinion, Justice WELCH agreed that defendant was not entitled to relief under MCR 6.500, *id*. (WELCH, J., concurring), but Justice WELCH observed that MCR 6.428 had recently been amended and, under the new rule, errors by the court could entitle a defendant to relief. *Id*. at 934. Justice WELCH therefore "question[ed] whether, in 2006, the trial court had sufficient evidence to conclude that defendant was not indigent," and opined that "defendant may be able to invoke the amended court rule in a properly filed motion." *Id*.

On January 7, 2022, inspired by Justice WELCH's concurrence, defendant moved for relief from judgment, arguing that there had been a retroactive change in the law since he initially moved for relief from judgment, i.e., the amendment of MCR 6.428. Defendant claimed he was entitled to relief under the amended version of MCR 6.428 for two reasons. First, the fact that defendant's "anticipatory earnings from his music career that never came to fruition" was a matter beyond his control that made relief under MCR 6.428 appropriate. Second, the trial court erred in ruling that he was not indigent because, as Justice WELCH suggested, the trial court lacked sufficient evidence in 2006 to conclude that he was not indigent.

On February 10, 2022, the trial court denied defendant's motion, holding that there had not been errors by the trial court that were beyond defendant's control because defendant could have appealed the trial court's opinions issued "from 2006 to 2012." Instead, the trial court concluded that defendant "sat on his hands *waiting to invoke his appellate rights until 2017*." Thus, the trial court found "fault with Defendant for waiting over ten years before first raising this as an issue on appeal." The trial court also found that defendant had "not properly challenged the determination of non-indigence" because that "determination was made many years ago, and the Court did have information before it that Defendant had income." This appealed followed.

## II. LEGAL ANALYSIS

Defendant contends that the trial court erred in finding he was not indigent and denying his request for appointment of appellate counsel, so the trial court abused its discretion in 2022 when it denied his motion to restore his appellate rights under the amended version of MCR 6.428. We review for an abuse of discretion the trial court's ruling on a postconviction motion, and we review for clear error its findings of fact. *People v Byars*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 357013); slip op at 3. "A court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes." *Id*. at ___; slip op at 3-4. "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*.

-4-

at ___; slip op at 4 (quotation marks omitted). "We review de novo a lower court's interpretation of a court rule." *Id.*

Under the current version of MCR 6.428, which governs the restoration of appellate rights: "If the defendant, whether convicted by plea or at trial, was denied the right to appellate review or the appointment of appellate counsel due to errors by the defendant's prior attorney or the court, or other factors outside the defendant's control, the trial court shall issue an order restarting the time in which to file an appeal or request for counsel." In contrast, under the previous version of the rule, a defendant was only entitled to have the time to appeal restarted if the defendant could demonstrate that the failure to timely appeal was based on an error by his or her attorney.[1] This Court recently reviewed the amended language of MCR 6.428, *Byars*, ___ Mich App at ___; slip op at 6, and explained that, "[u]nder the plain, unambiguous language of MCR 6.428, defendant must establish that (1) errors by the defendant's previous counsel denied him appellate review or the appointment of appellate counsel, or (2) errors by the lower court denied him appellate review or the appointment of appellate counsel, or (3) some other factors that were outside defendant's control caused him the denial of appellate review or the appointment of appellate counsel." *Id.*

The guidance for assessing indigency and a defendant's eligibility for appointed appellate counsel, especially as it existed in 2006, is not entirely straightforward. There are no "specific and intricate rules defining standards of indigency in each case." *People v Arquette*, 202 Mich App 227, 230; 507 NW2d 824 (1993) (quotation marks omitted). "Indigence must be determined case by case." *Id.* If the record regarding a defendant's indigency contained contradictory information and raised "a severe doubt as to the defendant's ability to pay," this Court resolved the ambiguities in favor of the defendant. *People v Gillespie*, 41 Mich App 748, 752-753; 201 NW2d 104 (1972) (describing the evidence as being "vague and ambiguous," and the record as being contradictory, and resolving those ambiguities in favor of the defendant).[2]

In *Arquette*, the defendant was convicted of an offense that carried a life sentence, and the issue of indigency arose when defendant requested a copy of the trial transcript at public expense. *Arquette*, 202 Mich App at 229. This Court cited MCR 6.005(B) for the rule that "indigence is to be determined by consideration of the defendant's financial ability . . . ." *Id.* at 230. According to

---

[1] The previous version of MCR 6.428 stated: "If the defendant did not appeal within the time allowed by MCR 7.204(A)(2) and demonstrates that the attorney or attorneys retained or appointed to represent the defendant on direct appeal from the judgment either disregarded the defendant's instruction to perfect a timely appeal of right, or otherwise failed to provide effective assistance, and, but for counsel's deficient performance, the defendant would have perfected a timely appeal of right, the trial court shall issue an order restarting the time in which to file an appeal of right." MCR 6.428, as adopted July 13, 2005, 473 Mich lxx (2005).

[2] Court of Appeals cases decided before November 1, 1990, are not binding. MCR 7.215(J)(1). Although this Court is not "*strictly required* to follow uncontradicted opinions from this Court decided prior to November 1, 1990," those opinions are "nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

MCR 6.005(B), a trial court must consider five factors in determining a defendant's indigency whenever the defendant requests an appointed attorney and claims the financial inability to retain an attorney: "(1) present employment, earning capacity and living expenses; (2) outstanding debts and liabilities, secured and unsecured; (3) whether the defendant has qualified for and is receiving any form of public assistance; (4) availability and convertibility, without undue financial hardship to the defendant and the defendant's dependents, of any personal or real property owned; and (5) any other circumstance that would impair the ability to pay a lawyer's fee as would ordinarily be required to retain competent counsel."[3] MCR 6.005(B)(1)-(5), as adopted October 1, 1989, 433 Mich ccii (1989).

Our Supreme Court has explained that the factors enumerated in MCR 6.005(B) "are used to determine whether a defendant's pretrial indigency entitles him to a court-appointed attorney," and they "might be an adequate gauge of the indigency of a parolee or probationer," but they are "largely irrelevant in relation to imprisoned individuals." *People v Jackson*, 483 Mich 271, 293; 769 NW2d 630 (2009). Our Supreme Court provided that observation in the context of analyzing whether a trial court erred when it ordered a defendant to pay certain trial costs without expressly contemplating the defendant's ability to pay those costs. *Id*. at 277. The Court "acknowledge[d] that the trial courts require guidance . . . to determine whether a defendant is indigent when the court enters a posttrial order to enforce an attorney fee recoupment order." *Id*. at 294. Therefore, the Court instructed the trial courts to "focus on whether the defendant's indigency has ended and whether payment at the level ordered would cause manifest hardship." *Id*.

There appears to be some conflict between *Jackson* and *Arquette* on the applicability of the factors enumerated in MCR 6.005(B) in assessing indigency in postconviction proceedings for an incarcerated defendant. But at a minimum, the two rulings find common ground on the proposition that the fundamental consideration in deciding indigency is the defendant's ability to pay. *Jackson*, 483 Mich at 277, 294; *Arquette*, 202 Mich App at 230.

Here, this Court must decide whether the trial court abused its discretion in its 2022 order denying defendant's request for restoration of his appellate rights under MCR 6.428. In the trial court's view, the request had to be denied for two reasons. First, defendant was at fault for waiting so long to raise the issue on appeal. Second, the trial court's previous denial of defendant's request for appointed appellate counsel was not erroneous. In other words, the rejection of defendant's request for the appointment of an appellate attorney was "made many years ago, and the Court did have information before it that Defendant had income."

The trial court's first basis for rejecting defendant's request for relief—defendant's failure to appeal the prior orders—is not a valid reason for denying defendant's request for relief pursuant to MCR 6.428. Under the new version of that rule, relief is warranted when defendant "was denied the right to appellate review or the appointment of appellate counsel due to errors by . . . the court, or other factors outside the defendant's control . . . ." MCR 6.428. Under the language of the rule, defendant simply must establish that he was denied the right to appellate review or the appointment

---

[3] This is the version of MCR 6.005(B) that was in effect in 2006. That court rule was later amended to add the following consideration: "the rebuttable presumptions of indigency listed in the MIDC's indigency standard." MCR 6.005(B)(5).

of appellate counsel due to an error by the trial court, without regard for whether that error could somehow be deemed to be within defendant's control. See *id.*; *Byars*, ___ Mich App at ___; slip op at 6. The rule does not provide any expiration date after which defendant can no longer seek relief under MCR 6.428 on the basis of the trial court's error. Thus, the fact that defendant did not seek appellate review of previous trial court orders is not a valid basis to deny his claim. The trial court erred in its interpretation of MCR 6.428 when it placed blame on defendant for not appealing the prior trial court orders and denied relief under MCR 6.428 on that basis.

Turning to the second ground on which the trial court rejected defendant's request, we do not find merit in the trial court's analysis. The trial court concluded that the previous rejection of defendant's request for appointed appellate counsel was correct because that "determination was made many years ago, and the Court did have information before it that Defendant had income." Again, nothing in MCR 6.428 suggests that there is a time limit for seeking relief, so the fact that the trial court order that defendant now challenges was issued "many years ago" does not constitute a valid basis for denying defendant's request. We further find error in the trial court's conclusion that it had properly denied defendant's request for the appointment of appellate counsel in the first instance because the trial court "did have information before it that Defendant had income."

Regardless of whether the trial court should have analyzed defendant's claimed indigency under the factors enumerated in MCR 6.005(B) as suggested by this Court in *Arquette*, 202 Mich App at 229-230, or instead employed the more general standard that considers defendant's ability to pay an attorney, see *Jackson*, 483 Mich at 277, the trial court abused its discretion in the 2006 order denying defendant's request for appointed appellate counsel. The trial court clearly erred in its 2006 order when it eschewed all evidence of defendant's indigency in favor of a narrow focus on the statement in the PSIR that defendant received thousands of dollars per month from the sale of self-produced CDs. The trial court further abused its discretion when it denied defendant's renewed request in the 2007 motion despite explicit evidence in defendant's affidavit that showed he was indigent.

In its 2006 order, when considering defendant's indigency, the trial court relied entirely on the statement in the PSIR that defendant "expects to receive, while incarcerated, 'residuals' from the sale of CD's produced by him before his arrest of approximately $4,500-$8,000 per month." Defendant's PSIR contains a report that was prepared in advance of sentencing in an earlier case as well as an updated report prepared in anticipation of sentencing in the current case. The portion of the PSIR prepared for the earlier case stated that defendant had started his own business, M.O.C. Entertainment, on January 1, 2005. In a subsection entitled "Income," it additionally explained that "defendant was unemployed from 4/04 to present, however, the defendant reported grossing $8000.00 per month being self employed as a rapper and music producer with his own company, M.O.C. Entertainment; producing and marketing his own CDs." The updated portion of the PSIR stated that defendant told the investigator he was "still involved with M.O.C. Entertainment and recently released a CD entitled, 'Down's Syndrome,' on Valentines Day, 2006." Under "Income," it said that "defendant reported receiving sales residuals of approximately $4,500 per month from his records while he is incarcerated at the Muskegon Correctional Facility."

But that same section of the updated PSIR stated that "defendant denied having any assets." The PSIR prepared for the earlier case stated that defendant had outstanding restitution obligations of more than $22,000 from prior convictions. And even more damaging to the validity of the trial

court's finding of a lack of indigency was the conclusion set forth in the PSIR that "defendant's present economic status is low income and his income is derived from his self employment as a music producer/rapper with his own company, M.O.C. Entertainment." By acknowledging any money defendant was receiving from M.O.C. Entertainment, yet still characterizing defendant's economic status as "low income," the PSIR undercut the trial court's finding that defendant was not indigent as a result of money received from the entertainment company. Moreover, in the face of ambiguity, the trial court should have resolved conflicts in the evidence in defendant's favor. See *Gillespie*, 41 Mich App at 752-753. A review of the PSIR reveals that the trial court considered only one factor that could be relevant to its determination of indigency while ignoring others, and so the trial court failed to adequately consider defendant's ability to pay an attorney, as is required. See *Jackson*, 483 Mich at 277, 294; *Arquette*, 202 Mich App at 230.

The other potential source of information bearing upon defendant's indigency in 2006 was the affidavit of indigency that defendant submitted. In the 2006 order, the trial court noted that defendant's affidavit of indigency had "N/A" listed for many of his responses, which "deprive[d] the [trial court] of information necessary to determine whether [defendant] is or is not indigent." But it is clear from the trial court's 2007 order that the trial court actually drew a negative inference from defendant's responses. In that order, the trial court described defendant's responses in the 2006 affidavit as "seemingly calculated silence," which the trial court believed helped to rebut the presumption of indigency created by defendant's 2007 affidavit. To determine that "N/A" was an insufficient response and could not reasonably be interpreted to mean that defendant did not have any of those things, i.e., assets, income, and obligations, is perhaps an uncharitable interpretation. But to interpret that response as "seemingly calculated silence," even when subsequently presented with evidence establishing that defendant did not have assets or income, defies logic.

By cherry picking one statement from the PSIR as the exclusive consideration in assessing defendant's indigency, in the face of contradictory evidence, the trial court clearly erred in its 2006 order by finding that defendant was not indigent. Moreover, the trial court committed an abuse of its discretion by denying defendant's request for the appointment of appellate counsel. See *Byars*, ___ Mich App at ___; slip op at 3-4. The trial court's finding that defendant was not indigent was not a faithful application of either the facts or the law. Likewise, the trial court clearly erred in its 2022 order by concluding that its 2006 order was correct, so the trial court abused its discretion in denying defendant's 2022 request for restoration of appellate rights under MCR 6.428. See *id.*

In this appeal, we cannot tell with certainty whether defendant is challenging both the 2006 and 2007 trial court orders, or just the 2006 order. To the extent that defendant contends that the trial court erred in its 2007 order by denying his 2007 motion seeking the appointment of appellate counsel, that bolsters the conclusion that defendant is entitled to restoration of his appellate rights. In the 2007 order, the trial court concluded that the affidavit filed with the 2007 motion created a presumption of indigency, but the trial court nonetheless ruled that that presumption was rebutted by "defendant's statement in the psi and his prior affidavit's seemingly calculated silence . . . ." The trial court stated that defendant would not be entitled to appointed appellate counsel "unless and until defendant establishes that he was not receiving residuals in 2006 and that his contrary claim to the pre-sentence investigator was a lie, or that he is no longer receiving residuals, when they stopped and why, and has not squandered what he did receive . . . ." But defendant addressed many of those issues in his motion and attached affidavit. In the affidavit, defendant referred to the statement in the PSIR about receiving monthly residuals, and he firmly insisted that he "never

made any such statement to the probation agent indicating that [he] was receiving any kind of income from producing and marketing [his] records with M.O.C. Entertainment since [he had] been incarcerated." Defendant said his only statement on that issue was that he had been producing and selling records before he was arrested and he was receiving residuals before his incarceration. Defendant stated that he had "received no money or royalties from M.O.C. Entertainment since [his] arrest and incarceration on January 16, 2005." The PSIR reported that defendant had started M.O.C. entertainment on January 1, 2005. At most, that evidence established that there was a two-week period in January 2005 when defendant might have received money from his entertainment company.[4]

Despite defendant's statement that he had received no money from M.O.C. Entertainment since he was incarcerated on January 16, 2005, the trial court faulted defendant for failing to show that "he was not receiving residuals in 2006." In light of that statement in defendant's affidavit, it is unclear why the trial court instructed defendant that he needed to present evidence "confirming that the payment of residuals had stopped before his interview by the pre-sentence investigator, or that circumstances have changed such that he no longer receives residuals . . . ." Those comments in the 2007 order reveal the trial court largely ignored the evidence in defendant's 2007 affidavit, as that affidavit contained much of the evidence the trial court said defendant would need to prove his indigence. Beyond that, in his 2007 affidavit, defendant stated that he "had no money, stocks, bonds, assets, or income by which to retain counsel to represent [him] in [his] appeal of right in this case." Yet the trial court still found that the record established that defendant was financially able to hire appellate counsel. In the face of defendant's 2007 affidavit, which should have cleared up any ambiguity, the trial court continued to value the cherry-picked portions of the PSIR above all else. Consequently, the trial court clearly erred in its 2007 order when it found that defendant was not indigent, and abused its discretion when it denied his 2007 request for the appointment of appellate counsel.

We reverse the trial court's 2022 order denying defendant's request to restore his appellate rights under MCR 6.428 and we remand the case for the appointment of appellate counsel to pursue a direct appeal of right for defendant. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates

---

[4] Contributing to the problem, the trial court misquoted the affidavit as saying that defendant had not received any money since "June 16, 2005."