# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RYAN DAVID DEVELLIS,

       Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 327288
Livingston Circuit Court
LC No. 13-021684-FC

Before: STEPHENS, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Defendant pleaded guilty to delivery of a controlled substance causing death, MCL 750.317a. He was sentenced to 3 to 20 years' imprisonment and ordered to pay costs and fees totaling $1,398, including $1,200 in attorney fees, within 56 days of the order or be charged a 20-percent late fee under MCL 600.4803(1). We granted defendant's delayed application for leave to appeal.[1] Defendant raises challenges to the assessment of attorney fees and the late fee, and argues that counsel rendered ineffective assistance for failing to raise those challenges in the trial court. We affirm.

Defendant purchased heroin from a dealer in Ingham County and returned to Livingston County, where he met with Dorothy Brock. Defendant and Brock used the drugs throughout the evening in a hotel room in celebration of Brock's birthday. Brock died that night of an overdose. In exchange for agreeing to testify against his dealer, defendant was offered a favorable plea agreement and was sentenced to three years' imprisonment in accordance with that agreement.

In addition to ordering that defendant pay $1,200 in attorney fees for appointed trial counsel and a late fee of 20 percent if not paid within 56 days of the date of sentencing (July 17, 2014), the trial court ordered that the Department of Corrections (DOC) collect 50 percent of all funds received by defendant over $50.00 each month and remit those funds to the 44th Circuit Court. The Register of Actions indicates that on September 19, 2014, an automatic 20-percent late fee was charged in the amount of $279.60.

---

[1] *People v Devellis*, unpublished order of the Court of Appeals, entered June 17, 2015 (Docket No. 327288).

-1-

Defendant first argues that his attorney fees should be vacated because when he was sentenced, *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), and MCL 769.1k did not provide for the assessment of costs. Defendant did not challenge the fees and costs at sentencing, and this issue is unpreserved. *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). This Court reviews unpreserved issues for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious. *Id*. It affects the defendant's substantial rights if it affects the outcome of the case. *Id*.

When *Cunningham* was decided, MCL 769.1k(1)(b)(*iii*) provided that a defendant could be assessed "expenses of providing legal assistance to the defendant." See *Cunningham*, 496 Mich at 151-152, citing 2005 PA 316, as amended by 2006 PA 655. In considering the imposition of court costs under MCL 769.1k(1)(b)(*ii*), which provided for the assessment of "any costs," *Cunningham* reasoned that "courts may impose costs in criminal cases only where such costs are authorized by statute." 496 Mich at 149. The underlying criminal statute at issue in *Cunningham*, MCL 333.7407 (obtaining a controlled substance by fraud), failed to provide the sentencing court with authority to impose $1,000 in general "court costs," and *Cunningham* held that MCL 769.1k(1)(b)(*ii*) did not provide the court with independent authority to impose such costs. *Id*. at 153-154. Accordingly, *Cunningham* concluded that it was error to impose the court costs.

Following *Cunningham*, the Legislature amended MCL 769.1k, which continued to provide for the assessment of legal fees against a defendant. See 2014 PA 352; MCL 769.1k(1)(b)(*iv*). Defendant notes that an enacting clause of 2014 PA 352 states that "[t]his amendatory act applies to all fines, costs, and assessments ordered or assessed under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before June 18, 2014, and after the effective date of this amendatory act[, October 17, 2014]." See *People v Konopka*, 309 Mich App 345, 354-355; 869 NW2d 651 (2015), citing 2014 PA 352. Defendant notes that the underlying criminal statute in this case did not provide the trial court with specific authority to impose attorney fees, and that he was sentenced in July 2014, which was between June 18, 2014, and October 17, 2014. See *id*. at 354-359. Defendant argues that under *Cunningham*, the trial court lacked the authority to impose attorney fees under the prior version of MCL 769.1k.

However, *Cunningham*'s holding addressed the prior version of MCL 769.1k(1)(b)(*ii*)'s reference to "any cost," not MCL 769.1k(1)(b)(*iii*)'s authorization for the imposition of "expenses of providing legal assistance to the defendant." Well before *Cunningham*, this Court held that a trial court has authority to order a defendant to reimburse the county for costs paid for his representation. *People v Bohm*, 393 Mich 129, 131; 223 NW2d 291 (1974); *People v Nowicki*, 213 Mich App 383, 388; 539 NW2d 590 (1995). See also MCR 6.005(C) (adopted in 1989 and allowing a court to require a criminal defendant to repay all or part of the cost of his court-appointed attorney). Because *Cunningham*'s holding had no effect on the Legislature's express authorization under MCL 769.1k(1)(b)(*iii*) for the trial court to charge defendant attorney fees, defendant's argument lacks merit. Furthermore, the imposition of attorney fees

complies with the basic principle in *Cunningham* that "[t]he right of the court to impose costs in a criminal case is statutory," 496 Mich at 149 (citation and internal quotation marks omitted), because both versions of the statute explicitly provide for the imposition of attorney fees.[2]

Defendant also challenges the attorney fees and the late fee on constitutional grounds as summarized in *Jackson*, 483 Mich at 292 n 18, and the United States Supreme Court cases cited within that opinion. We review questions of constitutional law de novo," *Id*. at 277, but when unpreserved we review for plain error affecting substantial rights, *Carines*, 460 Mich at 763.

In *Jackson*, our Supreme Court considered various questions relating to "the process by which Michigan trial courts impose attorney fees on convicted criminal defendants who have used court-appointed attorneys[,]" specifically the validity of MCL 769.1k and MCL 769.1*l* (providing a process for the DOC to recoup fees from a prisoner's prison account).[3] 483 Mich at 274, 283. Before the enactment of that legislation, *People v Dunbar*, 264 Mich App 240; 690 NW2d 476 (2004), held "that, before imposing a fee for a court-appointed attorney, a trial court must make a presentence articulation of its conclusion that the defendant has a foreseeable ability to pay the fee." *Jackson*, 483 Mich at 275. In summarizing the import of the due-process and equal-protection analysis under *James v Strange*, 407 US 128; 92 S Ct 2027; 32 L Ed 2d 600 (1972); *Fuller v Oregon*, 417 US 40; 94 S Ct 2116; 40 L Ed 2d 642 (1974); and *Bearden v Georgia*, 461 US 660; 103 S Ct 2064; 76 L Ed 2d 221 (1983), the *Jackson* Court concluded "that *Dunbar* was incorrect to the extent that it held that criminal defendants have a constitutional right to an assessment of their ability to pay before the imposition of a fee for a court-appointed attorney." *Jackson*, 483 Mich at 290. *Jackson* reasoned that "there is a substantive difference between the imposition of a fee and the enforcement of that fee." *Id*. "Despite our deepest wishes to the contrary, no judge is so clairvoyant, and the state should not be forever precluded from seeking repayment from a defendant who has later gained the ability to pay, simply because

---

[2] Defendant only challenges the authority of the court to impose attorney fees. Defendant does not assert that the amount of the fee does not accurately reflect the cost of his legal expenses.

[3] MCL 769.1*l* states:

> If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in section 1k and the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, is transferred to community programs, or is discharged on the maximum sentence. The department of corrections shall give an order of restitution under section 20h of the corrections code of 1953, 1953 PA 232, MCL 791.220h, or the crime victim's rights act, 1985 PA 87, MCL 780.751 to 780.834, priority over an order received under this section.

at the time of sentencing it wrongly concluded that the defendant would never rise above indigency." *Id.*

*Jackson* further held that due-process requirements are properly observed when fees and costs are imposed under MCL 769.1k because "*whenever* a trial court attempts to enforce its imposition of a fee for a court-appointed attorney under MCL 769.1k, the defendant must be advised of this enforcement action and be given an opportunity to contest the enforcement on the basis of his indigency." 483 Mich at 292. Any claim regarding a defendant's ability to pay the fees or costs is premature until enforcement has begun, and at that point, a defendant must make "a timely objection based on his claimed inability to pay," and the trial court should, in its sound discretion, then evaluate the defendant's ability to pay, i.e., "whether payment at the level ordered would cause manifest hardship." *Id.* at 292-294.

In this case, the trial court imposed attorney fees pursuant to MCL 769.1*l*, which *Jackson* recognized as an enforcement of the fees without an ability-to-pay assessment. 483 Mich at 294-295. Although defendant does not assert an argument regarding the constitutionality of MCL 769.1*l*, it is notable that *Jackson* found the statute constitutional because the statute "inherently calculates a prisoner's general ability to pay and, in effect, creates a statutory presumption of nonindigency." *Id.* at 295. *Jackson* reasoned that "a prisoner's 'living expenses' are nil, as the prisoner is clothed, sheltered, fed, and has all his medical needs provided by the state. The funds left to the prisoner on a monthly basis are more than adequate to cover the prisoner's other minimal expenses and obligations without causing manifest hardship." *Id.* Nevertheless, because "one's indigency is an individualized assessment,"

> if a prisoner believes that his unique individual financial circumstances rebut § 1*l*'s presumption of nonindigency, he may petition the court to reduce or eliminate the amount that the remittance order requires him to pay. However, because we adjudge a prisoner's indigency at the time of enforcement on the basis of manifest hardship and because a prisoner is being provided all significant life necessities by the state, we caution that the imprisoned defendant bears a heavy burden of establishing his extraordinary financial circumstances. [*Id.* at 296.]

Defendant argues that the imposition of the attorney fee would cause manifest hardship. Defendant is correct that under *Jackson*, the order to remit prisoner funds entered in this case pursuant to MCL 769.1*l* constituted enforcement of the fee, triggering his right to an ability-to-pay assessment. That the state has not received any funds because defendant has not made contributions to his prisoner account is irrelevant. However, defendant has not challenged the enforcement of the imposed fees in the trial court, rendering this Court's review inappropriate at this time. *Jackson* clearly requires that defendant seek relief in the trial court for consideration of "any proofs of his unique and extraordinary financial circumstances" and whether and to what extent the order should be modified to avoid manifest hardship to defendant or his immediate family. *Jackson*, 483 Mich at 296-297. Defendant may avail himself of this procedure, but it would be premature for this Court to consider further relief absent the trial court's exercise in the

first instance of its discretion in deciding "how to adjudicate a prisoner's claim that his individual circumstances rebut § 1*l*'s presumption of nonindigency." *Id.* at 297.[4]

Defendant also challenges the constitutionality of MCL 600.4803(1), which states:

A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. A late penalty may be waived by the court upon the request of the person subject to the late penalty.[5]

Defendant's argument is essentially that in relation to the class of indigent defendants, the late penalty under MCL 600.4803 is subject to the same equal-protection and due-process principles outlined in *Jackson* that were applicable to the initial assessment of attorney fees. Defendant argues that an assessment of the 20-percent late fee and the initial assessment of attorney fees have similar constitutional implications because, while the "State clearly has an interest in punishment and deterrence," "punishing a person for his poverty" does not further that

---

[4] Moreover, on appeal, defendant has not offered any evidence in meeting his heavy burden to show that his extraordinary financial circumstances establish that the recoupment procedures under MCL 769.1*l* would result in manifest hardship. His argument sets forth the general financial circumstances of a typical prisoner's income and the necessity to purchase items such as toiletries at regular store prices. *Jackson* specifically reasoned that any prisoner funds left untouched by MCL 769.1*l* would typically be sufficient to meet a prisoner's general life necessities. *Jackson*, 483 Mich at 295.

[5] In granting leave to appeal in *Jackson*, the Supreme Court noted that the statute "clearly allows imposition of this 20 percent late fee on outstanding balances of fees that the trial court imposed on a defendant, which includes the fee for a court-appointed attorney," but declined "to answer this question . . . because the trial court did not impose this late fee on defendant, and *there is no indication that it ever will*. Thus, at this point, the issue is not ripe." 483 Mich at 298 (emphasis added). The parties cite *People v Fisher*, unpublished opinion of the Court of Appeals, issued April 19, 2011 (Docket No. 295322), which arrived at a similar conclusion. Contrary to the prosecution's argument, this case is distinguishable because the Judgment of Sentence sets forth the due date for the costs and fees and imposes the 20-percent late fee if those costs and fees are not paid within 56 days of the due date in accordance with MCL 769.1*l*. Also, the Register of Actions strongly suggests that a 20-percent late fee in the amount of $279.60 was charged against defendant in September 2014 and applied to his balance.

interest. *Bearden*, 461 US at 671-672. Assuming that these constitutional implications are equally applicable to the 20-percent late fee, there is no indication in this case that the State has chosen a route of enforcement other than the recoupment mechanism under MCL 769.1*l*. *Jackson*'s analysis would be equally applicable to the recoupment of the late fee, and as previously explained, it is incumbent upon defendant to petition the trial court in the first instance for consideration of his financial circumstances and purported hardship. See *Jackson*, 483 Mich at 296-297.

In apparent recognition of that conclusion, defendant argues on appeal that the late fee is different than an initial assessment of attorney fees such that increased constitutional protections should apply; specifically, he argues that defendant was entitled to an opportunity to be heard regarding the particular circumstances of his situation *before* the late fee was applied. See *Mathews v Eldridge*, 424 US 319, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976) (stating that due process "is flexible and calls for such procedural protections as the particular situation demands") (citation and internal quotation marks omitted); *People v Malmquist*, 155 Mich App 521, 524; 400 NW2d 317 (1986). Defendant argues that *Jackson* denied that level of constitutionally mandated process with respect to the assessment of the attorney fees because, in large part, the attorney fees were part of the original sentence. Defendant reasons that *Bearden* required an ability-to-pay assessment "before the defendant was imprisoned for defaulting on a probation condition to pay costs," and *Jackson* distinguished the assessment of attorney fees on the basis that the defendant had "never had his sentence changed, increased, or amended because of his inability to pay a fee for his court-appointed attorney." *Jackson*, 483 Mich at 287. Accordingly, defendant argues, the enforcement of the late fee requires a pre-determination of defendant's ability to pay because it represents a post-sentence increase in defendant's punishment.

However, that argument is undercut by the fact that the potential for the late fee was in fact included within the Judgment of Sentence in this case. Furthermore, "the true issue is always indigency," *Jackson*, 483 Mich at 295, and defendant's argument is premised on the assumption that he has remained indigent. Defendant's argument also requires the assumption that his indigency caused his failure to pay the late fee, given his recognition that the late fee could be constitutionally applied where a defendant willfully refuses to pay or makes no bona fide effort to do so. See *Bearden*, 467 US at 668. Despite that *Jackson* expressly declined to review the constitutionality of the 20-percent late fee, it nonetheless recognized the general, common sense conclusion that a defendant's indigency is not necessarily a fixed, permanent status. See 483 Mich at 290. Accordingly, when the State enforces fees and costs through the prisoner recoupment statute, MCL 769.1*l*, the burden is not first on the State to establish that a defendant is not indigent before it may pursue payment under the statute; prisoners whose basic expenses are paid for by the State and whose accounts exceed the statutory amount before garnishment is permitted are presumptively non-indigents, regardless of their status at sentencing.

Here, before an order to remit prisoner funds was entered pursuant to MCL 769.1*l*, defendant was informed of and expressed understanding of the fact that he would be assessed all applicable fines, costs, and fees at his plea hearing, and his Judgment of Sentence specifically reflected the potential late fee. Further, his equal-protection claim is premised on his continued status as an indigent and a finding that he has not willingly avoided payment, but defendant

offers no adequate basis to refute the basic notion that collection efforts through MCL 769.1*l* account for a level of non-indigency such that if defendant wishes to avoid the State's garnishment of his prison account, he bears the burden to bring that issue in the trial court for its review of the circumstances particular to defendant's situation.[6]

Finally, defendant argues that counsel rendered deficient performance in failing to raise the issues defendant raises on appeal. Defendant asserts that counsel should have objected to the validity of the attorney fees as inconsistent with *Cunningham*, requested that the attorney fees be avoided or reduced on the basis of financial hardship, and asserted that the 20-percent late fee be waived. Whether a defendant received ineffective assistance of counsel presents a question of constitutional law reviewed de novo. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

> To establish ineffective assistance of counsel, a defendant must prove that his counsel's performance was deficient and that, under an objective standard of reasonableness, defendant was denied his Sixth Amendment right to counsel. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). The deficiency must be prejudicial to defendant to the extent that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 486 . . . . Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise. *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). [*People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005).]

The *Cunningham* issue lacks merit for the reasons stated above, and "[c]ounsel is not required to advocate a meritless position." *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). Regarding the remaining issues, the trial court entered the order to remit prisoner funds on the same day that it entered the Judgment of Sentence. Under *Jackson*, this amounted to the enforcement of the attorney fees without an ability-to-pay assessment. See 483 Mich at 294-295. Accordingly, it would be conceivable error if counsel failed to raise the issue and knew of defendant's purported extreme financial circumstances amounting to manifest

---

[6] Defendant also argues that the 20-percerent late fee is usurious and its application is irrational in light of the fact that it is not measured on the basis of the amount due and how late the payment is made. Importantly, a " 'facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.' " *IME v DBS*, 306 Mich App 426, 439-440; 857 NW2d 667 (2014), quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987). A constitutionally-offensive characteristic of cost-recoupment statutes as applied to indigent defendants is the lack of exception for indigents or preclusion of an ability-to-pay defense. See *James*, 407 US at 41-42. But MCL 600.4803(1) allows for a waiver of the late fee upon request of the party subject to the fee, which provides defendants an opportunity to avoid enforcement of the late fee on the basis of their indigency. Defendant has not yet sought that avenue of relief in the trial court, and thus, any argument regarding unconstitutional application of the statute is premature.

hardship such that the attorney fees would have been reduced or waived. However, "it is important to note that defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel," *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and as noted above, defendant does not adequately set forth his extreme financial circumstances (existing now or at the time when he asserts counsel should have raised the issue) or assert that counsel was sufficiently aware of such circumstances when the Judgment of Sentence and order to remit prisoner funds was entered. Indeed, at the time of entering his plea and sentencing, defendant was advised of and agreed to payment of applicable fines, costs, and fees. Moreover, there does not appear to be any reason why defendant cannot petition the trial court for the relief that he now seeks. For that reason, defendant has not established a necessary showing of prejudice for the purposes of his claim of ineffective assistance of counsel.

To the extent defendant argues that the 20-percent late fee should be vacated by this Court on the due-process ground that defendant was not first provided an ability-to-pay assessment, that argument is undercut by *Jackson*, although not expressly rejected by its analysis, and relies on distinguishing the attorney fees at issue in *Jackson* and the late fee under MCL 600.4803, which is an issue that has not been squarely addressed under the relevant caselaw. Counsel is thus not necessarily ineffective for failing to assert it below. See *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003) (stating that counsel's performance is measured on an objective basis under *prevailing* professional norms). Moreover, defendant fails to establish that he was prejudiced because, as with the attorney fees, defendant has not been precluded from asserting hardship based on indigency in avoidance of the late fee in the trial court.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher