# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JERRY DAMONE COLE,

Defendant-Appellant.

UNPUBLISHED
March 14, 2017

No. 329969
Wayne Circuit Court
LC No. 15-002508-01-FC

Before: RIORDAN, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of armed robbery, MCL 750.529. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 190 to 360 months' imprisonment. We affirm but remand for the correction or striking of any errors in the presentence investigation report (PSIR) that were raised at sentencing and for the correction of clerical errors in the judgment of sentence.

This case arises from defendant's armed robbery of an acquaintance, Kenneth Pugh, on March 6, 2015, in Detroit, Michigan. While giving Pugh a ride in a truck, defendant used an ice pick to rob Pugh, taking approximately $400. Defendant's first jury trial ended in a hung jury. His second jury trial resulted in the conviction and sentence from which he now appeals. Unless otherwise indicated, any discussion of testimony is taken from defendant's second trial.

Defendant first argues that he was denied the effective assistance of counsel at his second trial. Defendant argues that defense counsel[1] was ineffective for failing to obtain transcripts from the first trial to use in impeaching Detroit Police Officer Charles Ruffin regarding what defendant characterizes as Ruffin's changing and inconsistent testimony. Defendant notes that Ruffin initially testified at the first trial that he did not find an ice pick during an inventory search of the truck in which defendant robbed Pugh but then later reversed himself and said that he did find an ice pick. Defendant further emphasizes that Ruffin's description of the ice pick at the

---

[1] We use the term "defense counsel" to refer to defendant's trial counsel, who represented defendant at both his first and second trial. All references to defendant's appellate counsel will use the term "appellate counsel."

-1-

first trial varied in some respects from his description of the ice pick at the second trial. Defendant contends that defense counsel's failure to use the transcripts from the first trial to impeach Ruffin on these points constituted ineffective assistance. We disagree.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (footnote and citations omitted). Defendant did not move in the trial court for a new trial or an evidentiary hearing. Hence, the issue is unpreserved for review.

Whether a defendant was deprived of the effective assistance of counsel presents "a mixed question of fact and constitutional law." *Heft*, 299 Mich App at 80 (footnote and citation omitted). Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo. *Id*. Because "defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *Id*. (Footnote and citations omitted.)

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). "Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted). Defense counsel has "wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007) (footnote and citation omitted). "A failed strategy does not constitute deficient performance." *Petri*, 279 Mich App at 412 (citation omitted). Defense counsel's decisions regarding whether or how to question witnesses are presumed to be matters of trial strategy. *Russell*, 297 Mich App at 716; *Petri*, 279 Mich App at 413. Such decisions comprise ineffective assistance of counsel only if the defendant has been deprived of a substantial defense. *Russell*, 297 Mich App at 716. A defense is substantial if it might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

"When asserting ineffective assistance of counsel premised on counsel's unpreparedness, a defendant must demonstrate prejudice resulting from the lack of preparation." *People v Bosca*, 310 Mich App 1, 37; 871 NW2d 307 (2015) (citation omitted). Defense counsel has a duty to undertake reasonable investigations or to make a reasonable determination that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks and citation omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *Russell*, 297 Mich App at 716. A defendant claiming ineffective assistance has the burden of establishing the factual predicate for the claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Even if we were to assume that defense counsel did not obtain transcripts of the first trial before the second trial, this does not establish that defense counsel's performance was constitutionally deficient. Defense counsel represented defendant in both the first and second trials and thus may have concluded that his memory and any notes he took concerning the first trial were adequate to conduct the second trial. Defendant has not shown that any failure to order the transcripts of the first trial before the second trial comprised an unreasonable professional judgment. With respect to defense counsel's declination to cross-examine Ruffin at the second trial about his initial testimony at the first trial that he did not find an ice pick in the truck, defendant has not overcome the presumption that defense counsel's decision regarding how to question Ruffin comprised a sound trial strategy. At the second trial, defense counsel cross-examined Ruffin about his failure to note in his report that he had found an ice pick and his failure to tell any superiors or other officers that he had found the ice pick. Defense counsel also cross-examined Ruffin about the fact that the truck had subsequently been released to its owner and that the police no longer had access to the truck; defense counsel then elicited agreement from Ruffin that there was thus no longer any way to corroborate whether there was an ice pick in the truck. During closing argument, defense counsel used this aspect of Ruffin's testimony to suggest that Ruffin lacked credibility.

Defendant was not deprived of a substantial defense. Defense counsel reasonably chose at the second trial to emphasize in his cross-examination of Ruffin and in closing argument the facts that Ruffin did not tell anyone about finding the ice pick and that the truck in which Ruffin claimed to find the ice pick was now gone such that there was no way to corroborate Ruffin's testimony. Defense counsel may have concluded that this was a more effective defense than to delve into Ruffin's testimony from the first trial. If Ruffin had been questioned at the second trial about his initial failure at the first trial to remember finding the ice pick, Ruffin presumably would have again explained that he did not realize the importance of the ice pick when he saw it because he was told by the investigator in charge of the case to look for a gun, and that his memory of seeing the ice pick months earlier began to be triggered only after defense counsel brought it up at the first trial. Ruffin corrected his testimony during the first trial to explain that he did see an ice pick in the truck. Defense counsel's decision regarding how to cross-examine Ruffin reflected a reasonable strategic choice. The fact that the strategy ultimately failed does not establish that defense counsel's performance was deficient. *Petri*, 279 Mich App at 412.

Defense counsel's failure to question Ruffin about certain differences in his descriptions of the ice pick at the first and second trials also did not deprive defendant of a substantial defense. At the first trial, Ruffin testified that the ice pick was 4 to 6 inches long and silver. At the second trial over a month later, Ruffin testified that the ice pick was 6 to 8 inches long and was "rust" or "almost rusted like" with a brown handle. The size differential is not significant given the lapse of several months from the time that he saw the ice pick until each of the two trials, which were held over a month apart, as well as the fact that he was told to look for a gun in the truck and did not realize the importance or relevance of the ice pick when he saw it. In addition, the fact that the ice pick was "rust" or "almost rusted like" and had a brown handle is not necessarily inconsistent with the ice pick being silver, if Ruffin meant that the ice pick was literally somewhat rusted. But to the extent that Ruffin's description of the ice pick as rust or almost rusted suggests a different color than silver, the jury in the second trial had already heard Pugh's testimony that the tip of the ice pick was silver, although he could not see the handle because it was covered by defendant's hand. Defense counsel thus could have concluded that

-3-

there were inconsistencies at the second trial itself with respect to the descriptions of the ice pick by Pugh and Ruffin and that these inconsistencies raised credibility concerns regarding one or both of these witnesses. Defense counsel could also have been concerned that bringing up Ruffin's testimony from the first trial about the ice pick being silver would have offered potential corroboration of Pugh's testimony at the second trial that the tip of the ice pick was silver. That is, Ruffin's description of the ice pick at the first trial was arguably more consistent with Pugh's description than was Ruffin's description at the second trial; it thus could have been damaging to the defense to inform the jury at the second trial of Ruffin's testimony describing the ice pick at the first trial. Accordingly, defendant has failed to overcome the presumption that defense counsel's decisions regarding how to cross-examine Ruffin reflected reasonable strategic choices.

Defendant's reliance on *Blackburn v Foltz*, 828 F2d 1177 (CA 6, 1987), is misplaced.[2] In *Blackburn*, 828 F2d at 1183-1186, the United States Court of Appeals for the Sixth Circuit determined that defense counsel was ineffective in numerous respects, including in failing to obtain a transcript of the defendant's first trial in order to impeach the identification testimony of the victim, who was the sole eyewitness, at the second trial. In that case, however, defense counsel admitted that the only defense available was to weaken the victim's testimony with her prior testimony. *Id*. at 1183. Because no other defense was available, the court held, the defense counsel's failure to prepare for effective impeachment of the victim was objectively unreasonable. *Id*. at 1184. This left the only identifying witness's testimony virtually unchallenged. *Id*. at 1186. By contrast, in this case, it was not necessary to use the transcript of the first trial to impeach Ruffin. As discussed, Ruffin's credibility was challenged by defense counsel on cross-examination and in closing argument by emphasizing Ruffin's failure to tell anyone, or to include in his report, that he had found an ice pick in the truck, and by noting that the truck was now gone such that there was no way to corroborate that an ice pick was found in the truck. Unlike in *Blackburn*, then, defendant had another means of challenging the credibility of the witness at issue, which defense counsel vigorously pursued at the second trial. And unlike in *Blackburn*, Ruffin was not the sole identifying witness; he was instead a police officer who offered testimony corroborating the testimony of the victim, Pugh.

Defendant briefly suggests that defense counsel should also have used the first trial transcript to cross-examine Pugh about the fact that he had falsely told the police that defendant took Pugh's book bag, even though Pugh admitted at the first trial that this was not true. Defense counsel may have reasonably declined to raise this issue at the second trial given that there was already testimony at the second trial establishing that Pugh had lied to the police. In particular, Pugh admitted on direct examination that he falsely told the police about defendant having a gun during the robbery but then told the authorities the next day that no gun was involved. Defense counsel cross-examined Pugh about this false statement to the police and emphasized it in closing argument as well. Defense counsel also noted in closing certain other inconsistencies in Pugh's statements, including that he initially told the 911 operator that defendant was driving a

---

[2] The decisions of lower federal courts are not binding on this Court but may be considered as persuasive authority. *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011).

white minivan rather than a black truck. Cross-examination of Pugh regarding the fact that he had lied about defendant taking a book bag is not reasonably likely to have made a difference in the outcome given that an extensive challenge to Pugh's credibility was mounted both on cross-examination and in closing argument, particularly on the basis of his lie that defendant had a gun. Accordingly, defendant has not demonstrated that defense counsel's performance fell below an objective standard of reasonableness.

But even if defense counsel's performance could be deemed constitutionally deficient in any of the respects asserted by defendant, we conclude that defendant has failed to establish prejudice. Pugh's testimony that defendant robbed him is circumstantially corroborated not only by Ruffin's discovery of the ice pick in the truck defendant had been driving, but also by the testimony of police officers that: a large sum of cash in excess of $400, which was the approximate amount taken from Pugh, was found on defendant's person when he was arrested; defendant was wearing and had in the truck clothing items consistent with what Pugh had described to the police; and a surveillance video from a liquor store where Pugh came into contact with defendant that day showed defendant and Pugh interacting with each other before the robbery. Given the strong circumstantial evidence corroborating Pugh's testimony that defendant robbed him, we are not convinced that defendant has established a reasonable probability of a different outcome but for defense counsel's alleged errors.

Defendant next argues that, because he is supposedly indigent, the imposition of a 20% late payment penalty violated his constitutional rights to equal protection and due process. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Also, "strictly legal challenges to the imposition of fees and costs" must be raised when the trial court imposes the fee. *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Defendant raised no objection below to the imposition or enforcement of the late payment penalty. Therefore, the issue is unpreserved.

Questions of constitutional law are reviewed de novo. *Jackson*, 483 Mich at 277. Because the issue is unpreserved, this Court's review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain error rule, a defendant must demonstrate that an error occurred, that it was clear or obvious, and that it affected the defendant's substantial rights, i.e., that it affected the outcome of the lower court proceedings. *Id*. at 763. Once these requirements are satisfied, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 763-764 (citation and quotation marks omitted).

MCL 600.4803(1) provides for the imposition of a 20% late payment penalty when a defendant fails to pay fees or costs in full within 56 days of the due date. In particular, the statute states:

> A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the

amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. A late penalty may be waived by the court upon the request of the person subject to the late penalty. [MCL 600.4803(1).]

Also, MCL 769.1*l* provides for the deduction of funds from an incarcerated defendant's prison account:

If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in [MCL 769.1k] and the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, is transferred to community programs, or is discharged on the maximum sentence. . . .

At sentencing, the trial court ordered defendant to pay restitution of $400, court costs of $1,300, and various fees of $258, making for a total financial obligation of $1,958. In addition, the judgment of sentence contained the following language: "The due date for payment is ___. Fines, costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed." The blank space for the due date was not filled in on the judgment of sentence. An amended judgment of sentence contained the same language and also did not have a date filled in for the due date. On the date of sentencing, the trial court entered an order to remit prisoner funds for fines, costs, and assessments, in the amount of $1,558, which was the total amount of fees and costs owed by defendant; the order noted that restitution is collected under a separate procedure. The order directed the Department of Corrections to "collect 50% of all funds received by the defendant over $50.00 each month." The register of actions reflects that an additional assessment of $260 was made 57 days after the date that defendant was sentenced; this amount is 20% of the costs imposed. The new balance due is $2,218. Therefore, a review of the record confirms that the late penalty was imposed.

On appeal, defendant claims that because he is supposedly indigent, the 20% late payment penalty statute violates his constitutional rights to equal protection and due process. In support of his argument, defendant cites two United States Supreme Court cases: *Bearden v Georgia*, 461 US 660; 103 S Ct 2064; 76 L Ed 2d 221 (1983), and *James v Strange*, 407 US 128; 92 S Ct 2027; 32 L Ed 2d 600 (1972). In *Jackson*, 483 Mich at 278-280, our Supreme Court explained the holdings in *James* and *Bearden*:

First, in *James v Strange*, 407 US 128; 92 S Ct 2027; 32 L Ed 2d 600 (1972), the Court held that a Kansas statute requiring payment of fees for court-

appointed attorneys was unconstitutional because it did not give defendants who owed the state a debt the same debtor exemptions that civil debtors received under the state's laws. Specifically, a defendant who owed the state of Kansas for his court-appointed attorney could only exempt his homestead from collection, whereas the normal civil debtor had a host of other exemptions. *Id*. at 130-131. *James* held that the difference in the laws' application to indigent defendants and other civil debtors violated equal protection principles. *Id*. at 140-142.

\* \* \*

Finally, in *Bearden v Georgia*, 461 US 660; 103 S Ct 2064; 76 L Ed 2d 221 (1983), the Court considered a trial court's decision to revoke a defendant's probation, and remand him to prison, for his inability to pay a fine, which was imposed as part of his probation sentence. *Id*. at 662. Relying on notions of due process and fundamental fairness, the Court held that in order to punish a defendant for "failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." *Id*. at 672. "If the [defendant] willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation. . . ." *Id*. But simply punishing a defendant for his lack of payment, without analyzing his fault in his lack of payment, "would deprive [him] of his . . . freedom simply because, through no fault of his own, he cannot pay the fine." *Id*. at 672-673. "Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id*. at 673. [Alterations in *Jackson*.]

Although our Supreme Court in *Jackson* did not address the constitutionality of the late payment penalty set forth in MCL 600.4803(1), the *Jackson* Court did offer an analysis that is useful in considering this issue. In *Jackson*, our Supreme Court addressed a challenge to the constitutionality of MCL 769.1k. MCL 769.1k "allows for the imposition of a fee for a court-appointed attorney irrespective of a defendant's ability to pay, and [MCL 769.1*l*] allows the trial court to order that a prisoner's prison account be reduced to satisfy costs imposed under [MCL 769.1k]. This is usually accomplished by a remittance order, which also does not require an ability-to-pay analysis." *Jackson*, 483 Mich at 286. In *Jackson*, 483 Mich at 294, our Supreme Court rejected the challenge to the constitutionality of MCL 769.1k and held that "there is no constitutionally required ability-to-pay analysis until the fee is actually enforced." The *Jackson* Court noted that MCL 769.1*l* provided a procedure for enforcing the fee without an ability-to-pay assessment but concluded that this procedure was constitutional "because the statute's monetary calculations necessarily conduct a preliminary, general ability-to-pay assessment before the prisoner's funds are taken." *Id*. at 294-295.

MCL 769.1*l* inherently calculates a prisoner's general ability to pay and, in effect, creates a statutory presumption of nonindigency. The provision only allows the garnishment of a prisoner's account if the balance exceeds $50. Although this amount would be insufficient to sustain a defendant living among the general populace, it is uncontested that a prisoner's "living expenses" are nil, as the prisoner is clothed, sheltered, fed, and has all his medical needs provided by the state. The funds left to the prisoner on a monthly basis are more than

-7-

adequate to cover the prisoner's other minimal expenses and obligations without causing manifest hardship. Thus, we conclude that [MCL 769.1*l*'s] application makes a legitimate presumption that the prisoner is not indigent. [*Id*. (footnote omitted.)]

"[I]f a prisoner believes that his unique individual financial circumstances rebut [MCL 769.1*l*'s] presumption of nonindigency, he may petition the court to reduce or eliminate the amount that the remittance order requires him to pay." *Id*. at 296.

[W]hen reviewing a prisoner's claim, lower courts must receive the prisoner's petition and any proofs of his unique and extraordinary financial circumstances. Further, the lower courts should only hold that a prisoner's individual circumstances warrant amending or reducing the remittance order when, in its discretion, it determines that enforcement would work a manifest hardship on the prisoner or his immediate family. The trial courts are under no obligation to hold any formal proceedings. They are only required to amend the remittance order when [MCL 769.1*l*'s] presumption of nonindigency is rebutted with evidence that enforcement would impose a manifest hardship on the prisoner or his immediate family. Beyond these basic parameters, we leave it to the trial courts, in their sound discretion, to decide how to adjudicate a prisoner's claim that his individual circumstances rebut [MCL 769.1*l*'s] presumption of nonindigency. [*Jackson*, 483 Mich at 296-297 (footnote omitted).]

We believe that *Jackson* provides guidance in resolving defendant's constitutional challenge to the 20% late payment penalty contained in MCL 600.4803(1). The above analysis in *Jackson* applies equally to the recoupment of the late fee, such that defendant is required to petition the trial court in the first instance for consideration of his unique financial circumstances and alleged hardship. See *Jackson*, 483 Mich at 296-297. Defendant has not yet presented any evidence in the trial court to rebut the presumption of nonindigency for prisoners whose basic expenses are paid for by the state. Defendant suggests that the enforcement of the late fee violated his right to due process by increasing his punishment after sentencing and by denying him an opportunity to be heard before the late fee was applied. But the potential for the late fee was noted on the judgment of sentence. The key issue here, as in *Jackson*, is indigency, see *Jackson*, 483 Mich at 295, and defendant's argument is premised on the assumption that he remains indigent. *Jackson* rejects the proposition that a defendant's indigency is necessarily a fixed, permanent status. See *Jackson*, 483 Mich at 290. Because the state pays a prisoner's basic expenses, a prisoner whose accounts exceed the statutory threshold is presumed not to be indigent for the purpose of the prisoner recoupment statute, MCL 769.1*l*, even if the prisoner was indigent at the time of sentencing. Before the order to remit funds was entered, defendant was informed of the fines, costs, and fees being imposed, and his judgment of sentence noted that he faced a possible late fee. Hence, defendant was not denied notice of the potential late fee, and in accordance with the procedure set forth in *Jackson*, he has an opportunity to be heard regarding this matter by filing in the trial court a petition and any proofs regarding his unique and extraordinary financial circumstances. Defendant's equal protection claim is likewise premised on his continued indigency, and defendant has failed to bring a petition and any proofs in the trial court to rebut the statutory presumption of nonindigency arising from MCL 769.1*l*.

Defendant further suggests that the 20% late fee was impermissibly usurious and lacked a rational purpose. However, a " 'facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.' " *IME v DBS*, 306 Mich App 426, 439-440; 857 NW2d 667 (2014), quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987). The application of a cost-recoupment statute may be constitutionally offensive when there is no exception for indigents or when an ability-to-pay analysis is precluded. See *James*, 407 US at 141-142. MCL 600.4803(1) allows a waiver of the late fee and thus provides a defendant a way to avoid the late fee on the basis of indigency. Because defendant has not yet attempted to pursue the waiver procedure in the trial court, it is premature to consider any claim regarding unconstitutional application of the statute.

Next, defendant argues that certain corrections are required to the PSIR and also notes that there is a clerical error in the judgment of sentence. He presents an alternative argument that defense counsel was ineffective in connection with this issue. We agree in part and disagree in part with defendant's arguments.

In order to preserve a challenge to the accuracy of information contained in the PSIR, a defendant must raise the issue at sentencing. *People v Sharp*, 192 Mich App 501, 504; 481 NW2d 773 (1992); see also MCL 771.14(6) ("*At the time of sentencing*, either party may challenge, on the record, the accuracy or relevancy of any information contained in the presentence investigation report.") (emphasis added). At sentencing, the parties and the trial court agreed to make certain changes to the scoring of the prior record variables (PRVs) and the offense variables (OVs) as set forth in the sentencing information report (SIR) attached to the PSIR. Defense counsel also noted that he had reviewed the PSIR with defendant and that some corrections were required to the PSIR, including: defense counsel should be shown as appointed rather than retained; defendant was employed rather than unemployed; defendant has one sister rather than five sisters; Charlotte Burelle is defendant's former girlfriend rather than his sister; and defendant's son was 22 years old rather than 21 years old. After noting the above corrections, defense counsel stated, "Other than that it is, it is correct." Defense counsel did not raise an objection to the portion of the PSIR taken from the police report saying that defendant used a handgun in the robbery or to the portion of the PSIR referring to defendant as "a 62 year old divorced male[.]"

Defendant thus preserved his appellate argument with respect to the challenges to the PSIR that were noted at sentencing. But because defense counsel affirmatively stated that the PSIR was correct other than the errors raised at sentencing, defendant has waived his claim that the PSIR incorrectly said that he used a handgun and incorrectly described his age and marital status. This waiver extinguished any error and forecloses this aspect of defendant's appellate argument. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (waiver extinguishes any error and thereby forecloses appellate review).[3]

---

[3] We recognize that there is also case law stating that "[a] challenge to the validity of information contained in the PSIR may be raised at sentencing, in a proper motion for resentencing, or in a

-9-

With respect to defendant's argument that the judgment of sentence contains a clerical error, we note that clerical mistakes and errors arising from oversight or omission may be corrected at any time on motion of a party or on the court's own initiative. See MCR 6.435(A) ("Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party, and after notice if the court orders it."). Hence, this Court has authority to order the correction of any clerical mistakes and errors arising from oversight or omission. Although defendant did not raise this issue below, review is permitted under MCR 6.435(A).

Defendant presents an alternative argument that defense counsel was ineffective for failing to challenge the errors in the PSIR concerning the use of a handgun and concerning defendant's age and marital status. "[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *Heft*, 299 Mich App at 80 (footnote and citations omitted). Defendant did not move in the trial court for a new trial or an evidentiary hearing. Hence, the issue is unpreserved for review.

This Court reviews for an abuse of discretion a trial court's response to a claim of inaccuracy in the PSIR. *People v Lucey*, 287 Mich App 267, 275; 787 NW2d 133 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Kosik*, 303 Mich App 146, 154; 841 NW2d 906 (2013) (citation omitted). Whether a defendant was deprived of the effective assistance of counsel presents a "mixed question of fact and constitutional law." *Heft*, 299 Mich App at 80 (footnote and citation omitted). Any findings of fact are reviewed for clear error, while the legal questions are reviewed de novo. *Id*. Because "defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *Id*. (Footnote and citations omitted.)

"At a sentencing hearing, either party may challenge the accuracy or relevancy of information contained in the PSIR." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009), citing MCL 771.14(6).

> A sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges. The trial court may determine that the challenged information is accurate, accept the defendant's version, or disregard the challenged information as irrelevant. If the court chooses to disregard the challenged information, it must indicate that it did not consider the information when fashioning the sentence and it must strike the information from the PSIR. [*Lucey*, 287 Mich App at 275 (quotation marks and citations omitted).]

proper motion to remand." *People v Lloyd*, 284 Mich App 703, 706; 774 NW2d 347 (2009). Defendant raised this issue in his motion to remand that was filed in this Court. But as discussed, at sentencing, defendant waived his challenge to the accuracy of the information concerning the weapon used in the crime and concerning his age and marital status, thereby extinguishing the alleged errors. Therefore, there was no longer any error to review.

"If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections." MCL 771.14(6). "The Department of Corrections relies on the information contained in the PSIR to make critical decisions regarding a defendant's status. Therefore, it is imperative that the PSIR accurately reflect the sentencing judge's determination regarding the information contained in the report." *Lloyd*, 284 Mich App at 705-706 (citation omitted). When this Court determines that information must be corrected or stricken from the PSIR, the appropriate remedy is to "remand[] for the ministerial task of correcting the presentence investigation report." *People v Harmon*, 248 Mich App 522, 534; 640 NW2d 314 (2001).

At sentencing, the parties and the trial court agreed to certain changes to the scoring of the PRVs and the OVs, but those changes are not reflected in the copy of the SIR appended to the PSIR. We remand the case to the trial court to correct the SIR appended to the PSIR. In addition, defense counsel at sentencing noted other corrections that were required, including: defense counsel should be shown as appointed rather than retained; defendant should be listed as employed rather than unemployed; defendant has only one sister rather than five sisters; Burelle is defendant's former girlfriend rather than his sister; and defendant's son was 22 years old rather than 21 years old. The prosecutor did not express objection to these requested corrections. The copy of the PSIR provided to this Court does not correct or strike any of this information, even though the trial court stated that it would change the incorrect reference to defense counsel being retained and indicated that it would make the correction after being directed to the page of the PSIR containing the alleged error regarding defendant's employment status. On remand, the trial court should expressly respond to the remaining challenges to the PSIR asserted at sentencing and make any appropriate corrections or changes to the PSIR.[4]

In addition, defendant correctly notes that the judgment of sentence contains a clerical error in that it indicates that defendant was convicted by guilty plea when in fact he was convicted at a jury trial. We also note that the judgment of sentence fails to state that defendant was being sentenced as a fourth habitual offender, even though it is undisputed that he was sentenced as a fourth habitual offender. On remand, the trial court should correct these clerical errors. See MCR 6.435(A). The trial court should also clarify whether the judgment of sentence contains a clerical error in stating that defendant's minimum sentence is 190 months; the sentencing transcript indicates that the court stated that defendant's minimum sentence was 198 months. If this was a clerical error in the judgment of sentence, rather than an error in the transcript of the sentencing hearing, then the court should correct that clerical error as well.

---

[4] Because all of these errors in the PSIR pertained to minor matters and there is no indication that the trial court relied on the challenged information in sentencing defendant, resentencing is not required; defendant does not even make such a request or claim that these errors affected his sentence. All that is required is for the trial court to engage in the ministerial task of correcting or striking any errors in the PSIR. See *Harmon*, 248 Mich App at 533-534.

-11-

Corrected copies of the judgment of sentence and the PSIR should be provided to the Department of Corrections.

Finally, defendant contends that defense counsel was ineffective in failing to seek correction of the errors in the PSIR concerning defendant's use of a handgun and concerning his age and marital status. "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability [exists] that the outcome of the proceeding would have been different but for trial counsel's errors." *Ackerman*, 257 Mich App at 455 (citations omitted). Defendant has not demonstrated that he was prejudiced by the failure to object to the alleged inaccuracies. The trial court presided over defendant's trial at which Pugh testified that he had falsely told the police about defendant using a handgun and that defendant had really used an ice pick. The trial court was thus aware of the pertinent facts. Defendant has failed to demonstrate that the reference to a handgun in the PSIR affected defendant's sentence. Nor is there any indication that the errors concerning defendant's age and marital status affected his sentence. Defendant's assertion that his opportunity to obtain parole could be affected by the reference to a handgun in the PSIR is speculative, and he cites no authority establishing that the prejudice prong of an ineffective assistance of counsel claim may be satisfied by possible parole decisions in the future. Further, the PSIR makes clear that the reference to the handgun is taken only from a police report. The police report accurately reported what Pugh initially told the police. Pugh later told the prosecutor and testified that defendant used an ice pick rather than a gun in the robbery. It is also notable that defendant reviewed the PSIR with defense counsel and was afforded an opportunity to address the trial court at sentencing; yet defendant did not express any challenge to the information in the PSIR concerning the handgun or his age or marital status. Defendant has failed to demonstrate any prejudice arising from defense counsel's alleged error. Although defendant waived his challenge to this aspect of the PSIR and has failed to demonstrate ineffective assistance of counsel, we observe that the trial court on remand may on its own initiative correct any clerical errors in the PSIR. See MCR 6.435(A).

Affirmed but remanded for the correction or striking of any errors in the PSIR that were raised at sentencing and for the correction of clerical errors in the judgment of sentence. We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood